UNITED STATES ~~JUDGE DANIELS~~
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

**11 CIV 5766**

Civil Action No.:

TEEN MODEL (a minor), by her parents, PARENTS,

Plaintiffs,



COMPLAINT
AND JURY
DEMAND

-Against-

JASON LEE PARRY,
BLOOD IS THE NEW BLACK,
URBAN OUTFITTERS, INC., and
BRANDY & MELVILLE N.Y. INC.

Defendants,

------------------------------------------------------------X

All plaintiffs, by their attorneys, EDWARD C. GREENBERG, LLC, for their complaint

allege as follows:

## THE PARTIES

1.      Plaintiff "TEEN MODEL" is a resident of the State of California, County of Los

Angeles, a minor born on March 7, 1995 in Ventura County, California, who regularly conducts

business in the State of New York, is a professional model and is otherwise engaged in business

activities dependant upon her face, persona, reputation and image which generate income to her.

2.      That "PARENTS" reside in the State of California, County of Ventura, with child,

are the biological parents of child, and have continuously resided with and have each and/or both

physical and legal custody of Child since her birth. Disclosure of either of both of the parents'

names will inevitably serve to identify the minor plaintiff.

3.      That defendant JASON LEE PARRY (hereinafter "PARRY") is upon information

and belief a resident of the state of California, County of Los Angeles, where one or more of the

acts complained of hereinbelow occurred, and with, upon information and belief, a business

address of 3221 Hutchinson Avenue, Suite H, Los Angeles, California 90013.

1

4.     That defendant BLOOD IS THE NEW BLACK (hereinafter "BITNB") is upon information and belief a foreign business entity with its principal place of business in the State of California, County of Los Angeles, at 1286 West Sunset Boulevard, Los Angeles, California, 90026, which regularly does business in the State of New York, in this District, with and/or distributes products to retail stores including but not limited to URBAN OUTFITTERS. That BITNB also does business throughout the United States, and in other countries throughout the World including but not limited to various countries in Europe, Asia, Australia and North America. That upon information and belief, BITNB was founded by Mitra Khayyam, who is believed to be the driving force behind the BITNB company.

5.     That defendant URBAN OUTFITTERS (hereinafter "URBN") is a corporation, duly organized and existing under the laws of the State of Pennsylvania, with its headquarters and principal place of business at 5000 South Broad Street in Philadelphia, Pennsylvania, 19112, and is authorized to do business in the State of New York, with offices to do business located at, *inter alia,* 628 Broadway New York 10012-2679.

6.     That URBN maintains more than 130 retail outlets for the sale of apparel throughout the United States, Canada and Europe, and owns and operates more than fifteen retail store locations in numerous Counties in the State of New York, including in this District at inter alia, 628 Broadway, New York, 10012. That URBN sells, markets, and distributes merchandise through its online store and website www.urbanoutfitters.com, as well as at retail "brick and mortar" stores in the State of New York and throughout the United States.

7.     That defendant BRANDY AND MELVILLE NY INC. (hereinafter "B&M") is a domestic business corporation, duly existing and operating under the laws of the State of New York, with an office to do business in the State of New York at 83 Spring Street, New York, New York 10012. That, upon information and belief, Yvan Marsan owns all or principally all of the

2

equity in and principally operates, guides and makes business decisions for and on behalf of

"Brandy ♥ Melville" (a/k/a "BRANDY AND MELVILLE" or "BRANDY & MELVILLE") and

its affiliated and/or owned retail stores throughout the United States, in at least the states of New

York, California, and Hawaii, and elsewhere in the World including over 50 retail stores in Italy,

France, the United Kingdom and upon information and belief, elsewhere in the EU.

8.     That all defendants regularly do business in the State and County of New York.

## JURISDICTION

9.     Jurisdiction is conferred upon this Court by 15 U.S.C. §1125 (§43(a) of the Lanham

Act).

10.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2), in that a

substantial part of the events inclusive of those relevant to claims under the New York Civil Rights

Law §§ 50, 51, underlying the multiple claims asserted herein occurred in this State and this

District.

11.     Venue is also proper in this District pursuant to 28 U.S.C. §1391(c), in that

defendants are subject to personal jurisdiction within the State of New York.

12.     All of the defendants in this action regularly do business in, and derive income from

customers in the State of New York in this District, by way of the Internet and/or retail stores,

and/or other channels.

## FACTS COMMON TO ALL COUNTS

13.     The within action sounds in *inter alia:* violations of The New York Civil Rights

Law Sections 50 and 51, Section 43(a) of the Lanham Act, libel, and libel per se.

14.     In light of the nature of the complained of acts, for the reasons set forth hereinbelow

and in fulfilling their obligations to mitigate damages, all plaintiffs have filed this action

pseudonymously.

15.     That use of TEEN MODEL's real name in this litigation is not in her best interest. That such use will only serve to augment, amplify and republish the offending image and libel, and bring attention to the photographs which are the subject of this action brought under The New York Civil Rights Law Sections 50 and 51, thus exacerbating plaintiff's economic and non-economic damages and causing additional monetary and/or psychiatric harm to the minor plaintiff TEEN MODEL (hereinafter "TEEN") for no valid purpose whatsoever. The use of pseudonyms will help serve to avoid such harm and mitigate damages incurred and to be incurred in particular, by the minor plaintiff.

16.     That use of one or both of the parent's names in this complaint will serve to instantly disclose the identity of the child, TEEN MODEL.

17.     That the TEEN's identity and that of her PARENTS are well known to the defendants via *inter alia*, written disclosure of same to defendants and their respective counsel and that defendants are therefore in no way prejudiced by plaintiffs proceeding pseudonymously.

18.     That TEEN is well known in and to (at least) the modeling industry and her image and identity have been exposed on national TV and in other media to the general public. That copies of a portion of TEEN's modeling work are annexed hereto as Exhibit "A" (disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor).

19.     That TEEN is a professional model of considerable repute who notwithstanding her minority, has earned sums in consideration of modeling services and in connection with the licensing of her image for commercial and/or editorial purposes.

20.     That TEEN derives income from professional modeling and engages in other employment largely dependent upon her name, reputation and physical appearance including but not limited to appearances in advertisements and editorial photography. That there exists no

4

impediment to the continuation and expansion of her career and earning potential, other than the events and actions by the defendants, or one or more of them, as set forth in this complaint.

21.     That TEEN'S image has been used by numerous major corporations, retailers and business entities in conjunction with the sale of their goods and services and her career is distinctly in its ascendency.

22.     That TEEN has been and is today represented by two of the most prestigious modeling agencies in her capacity as a professional model, to wit: Ford Models at the time of the photo shoot and presently Next Model Management.

23.     That TEEN MODEL performs modeling services in the State of New York, Paris, France, and elsewhere for use of her image in the State of New York and elsewhere including but not limited to throughout the United States.

24.     That at no time has TEEN rendered and/or provided modeling services or authorized the use of her image, portrait, photograph or likeness to or on behalf of the defendants, or one or more of them, except as may be set forth with specificity herein.

25.     That defendant JASON LEE PARRY (hereinafter "PARRY") is a professional photographer much of whose  unconventional body of work, features nudity, semi nudity, sexually suggestive situations involving (only) women and what *appear* to be underage girls, many with bloody noses as if incurred as a result of repeated drug use and/or physical violence.

26.     That examples of PARRY's work as featured on his website, copies of which are annexed hereto as Exhibit "B", are open to the public and accessible to persons located within and without of the State of New York. That a cursory examination of all of the imagery contained on said site clearly leaves the viewer with the impression that the PARRY's work features work that is clearly "out of the mainstream" and unsuitable for publication in most general circulation magazines, newspapers and/or on broadcast television.

## PARRY'S PHOTO SHOOT OF TEEN AND THE IMAGES

27.    That on or about March of 2010, TEEN was to be photographed by PARRY with the full knowledge and approval of TEEN'S PARENTS and TEEN'S then professional model management company, Ford Models, for the purpose of an editorial in a magazine (hereinafter "The Magazine"). That to disclose the name of The Magazine would likely reveal the identity of TEEN.

28.    That TEEN was in fact photographed by PARRY in or around Los Angeles, California in March of 2010 (hereinafter the "Shoot Date") and PARRY created an undetermined number of images of TEEN most of which were created on an outdoor set of substantial proportions.

29.    That, at the time of the creation of the images by PARRY, TEEN was under the age of consent in any state of the United States and that PARRY was in possession of actual knowledge that TEEN was under the age of eighteen years, to wit: 15. That the use of a model of TEEN's age was and is utterly consistent with the bulk of PARRY's photographic work.

30.    That notwithstanding such actual knowledge that TEEN was a minor, PARRY styled and created images and photographs of TEEN where *inter alia*, she is posed in a blatantly salacious manner with her legs spread, without a bra, revealing portions of her breasts, and is otherwise posed by and for PARRY in order to portray her in a sexual manner, possessing beer, giving the impression of consuming beer, and upon information and belief, photograph(s) which were styled and shot by PARRY in such manner as to appear to include/portray TEEN's pubic hair.

### "OFFENDING IMAGE C"

31.    That among the numerous images of TEEN created by PARRY, was an image, annexed to the Complaint as Exhibit "C" (disclosed to the Court and all parties separately upon the

entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor) (hereinafter "Offending Image C"). That Offending Image C is one of the primary images which are the subject of this complaint.

32.     That Offending Image C is a blatantly salacious photo of TEEN with her legs spread in a highly sexual and suggestive manner. That, upon information and belief, such image is intended to and/or does portray TEEN's pubic hair.

33.     That, upon information and belief, the focal point of such image is and/or was intended by PARRY to be the area between TEEN's legs.

34.     That by any measure or standard, the image of TEEN, legs spread astride (backwards) on a Honda motorcycle appeals solely to the prurient interests and is otherwise utterly salacious. That such result was intended and accomplished by PARRY.

35.     That upon information and belief, the image of TEEN in a spread eagle position making her crotch area the focal point of the image may portray a child in a sexually suggestive manner and may be in violation of one or more Federal and/or State laws regarding the portrayal of minors by photographers, illustrators and/or graphic designers in sexually suggestive manners and/or portraying certain body parts.

**"OFFENDING IMAGE D"**

36.     That among the numerous images of TEEN created by PARRY, was an image, annexed to the Complaint as Exhibit "D" (disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor) (hereinafter "Offending Image D"). That Offending Image D is one of the primary images which is the subject of this complaint.

37.     That Offending Image D portrays TEEN in possession of alcoholic beverages, to wit: beer. That possession of beer by a 15 year old constitutes a crime in the State of New York

(McKINNEY'S ALCOHOLIC BEVERAGE CONTROL LAW § 65(c)), and is similarly a criminal offence

throughout most if not all of the states of the United States. That the imagery created of TEEN in

possession of beer (specifically, Budweiser) is intended and does in fact give the viewer the false

impression that TEEN has consumed not less than two and perhaps as many as five cans of what

appear to be 12 once cans of beer. That *providing* a minor with an alcoholic beverage is a crime in

the States of California (WEST'S ANN.CAL.BUS & PROF.CODE § 25658 (a)), New York

(McKINNEY'S ALCOHOLIC BEVERAGE CONTROL LAW § 65(1)) and most if not all other states of the

United States.

38.     That the portrayal of TEEN by PARRY gives a viewer of Offending Image D the

impression that TEEN is in possession of and/or has consumed at least two, if not five, cans of

beer.

39.     That, upon information and belief, Offending Image D was removed from a website

by a webmaster, or one on behalf of same, for its offensive and/or scandalous content.

40.     That such imagery presents TEEN in a false light, harmful to her reputation – as

both an underage possessor and consumer of alcohol - and is otherwise defamatory and constitutes

a libel *per se* as set forth in detail herein.

**UNKNOWN ADDITIONAL IMAGE**

41.     That PARRY created additional images of TEEN, which were published in a

magazine in 2010, the photo spread of which is annexed to the Complaint as Exhibit "E"

(disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing

Order, as to make same a public record would serve to reveal the identity of TEEN, a minor)

(hereinafter referred to as the "Originally Published Shoot Images".

42.     That among such Originally Published Shoot Images is an image which depicts

TEEN in a leather jacket without a shirt and bra. That upon information and belief, PARRY, or

those acting on his behalf, created images that portray TEEN in the same setting and "outfit", but which depict portions of her breasts (hereinafter collectively the "Shirtless Image(s)").

43.    That such Shirtless Image(s) portrays TEEN in a sexual manner, appealing to those of prurient interests. That such Image, and one or more of the additional images of TEEN taken by PARRY, portray TEEN in an offensive and scandalous manner.

44.    That additionally PARRY styled and created an image of TEEN which depicts TEEN riding on a moving motorcycle without a helmet. That PARRY is in possible violation of the **California Vehicle Code, Division 12, Chapter 5, Article 7, Section 27803** which requires passengers on motorcycles to wear helmets.

45.    That, upon information and belief, PARRY instructed, directed and caused TEEN to ride as a passenger on a moving motorcycle for the sole purpose of creating photographic images of TEEN, such images appearing on his website. That TEEN was not provided with any safety equipment of any kind including but not limited to a helmet and such selection of wardrobe and safety protection and/or lack thereof was determined and made by PARRY.

46.    That PARRY's disregard for the physical and mental well-being of TEEN is demonstrative of a consistent and recurring theme in his dealings with TEEN and the photographs of TEEN, both prior and subsequent to: receipt of actual notice from TEEN's counsel and retention of his own counsel, and full knowledge of the specific objections to any use of the imagery of TEEN none of which is model released.

47.    That upon information and belief, one or more of the additional images of TEEN taken by PARRY, including but not limited to the Originally Published Shoot Images, is/are also one/some of the primary image(s) which is/are the subject of this Complaint.

9

48.     That the use of TEEN's image serves no public purpose nor do defendants, or one or more of them, represent that such use serves to inform the public on a matter of public concern and/or the public good.

## PARENTS' EXPRESSED DISAPPROVAL OF PARRY'S IMAGES OF TEEN

49.     That upon information and belief, such photos were to be approved by PARENTS prior to publication in The Magazine.

50.     That prior to the publication of PARRY's photographs of TEEN in The Magazine, said photo spread and layout was presented to PARENTS and TEEN by TEEN's agent (Ford Models) for their review and approval. That upon viewing same, PARENTS and TEEN expressed to TEEN's agent that they did not approve of the Image (hereinafter "Offending Image C") annexed to the Complaint as Exhibit "C", that they did not know that TEEN was being photographed in such manner, and that they "never wanted to see such image again" finding it unacceptable, unsuitable and offensive on multiple grounds.

51.     That TEEN's agent, Ford Models, instructed and directed PARRY that he was not to publish Offending Image C, in particular, in any form, whatsoever, as to do so would be against TEENS, PARENT's and TEEN's agent's wishes, and that it was (*inter alia*) objectionable, salacious, in bad taste and otherwise demeaning of TEEN.

52.     That PARRY replied to TEEN's agent that he would comply with such requests and never publish that image in any form, at any time, whatsoever.

53.     That despite PARENT's, TEEN's, and TEEN's agent's expressed wishes and specific direction that PARRY not employ Image C in The Magazine, or in any other media, such Image was published in The Magazine, causing harm to TEEN as set forth herein.

54.     That on the aforesaid Shoot Date, PARRY created additional photographic images of TEEN is various photographic formats and same have been published and republished on

numerous blogs and websites, one or more of which were under the custody and supervision of one or more of the defendants.

55.     That no model release, contract, model voucher, agreement, nor any other document was either proffered by or on behalf of PARRY nor executed by TEEN, PARENTS, nor any person(s) with authority to execute any such document, permitting any images created by PARRY to be used *by him nor any defendant named herein in any media, during any term nor for any purpose whatsoever.*

56.     That as set forth hereinbelow, no executed or exculpatory document of any kind, has been produced or exists, reflecting any consent to the use of the child's image, portrait or likeness for the purposes used herein (or any other purpose) as specifically required by the New York Civil Rights Law Sections 50 and 51 for images used in the State of New York for trade or advertising purposes, as well as by similar and substantially equivalent statutes in other states.

57.     That in the event either PARENT would have been asked to sign any such release for the offending uses complained of herein, *no such consent would have been given.*

58.     The photographs of TEEN created and styled by PARRY are intended and do portray and/or incorporate numerous objectionable, libelous and salacious visual elements and themes.  That such styling manifests PARRY'S utter disregard for the age of the TEEN as well as his motivation to act in such manner which ignores and disregards any consequences to TEEN.

### FAILURE TO OBTAIN A RELEASE

59.     That it is the customary and routine business practice for professional photographers to secure written, duly executed model releases on (at least) all occasions where the imagery will or may be used in connection with the commercial promotion, sale, advertising of a product, service, organization or entity or where (as here) the image(s) itself is part of or is inextricably intertwined with *inter alia*, a product, consumer item or service.

11

60.    That PARRY failed to secure a written model release from TEEN's parents or from someone with the legal authorization to execute a model release on her behalf for the use of her image *in any media for any purpose whatsoever*.

61.    That such failure by PARRY demonstrated a dramatic departure from the normal and customary practices of professional photographers and more particularly, photographers who employ the services of children or minors as professional models.

## THE OFFENDING APPAREL AND ADVERTISEMENTS WITH TEEN'S IMAGE

62.    That, upon information and belief, PARRY entered into a commercial business relationship and/or agreement with BITNB to, *inter alia*, design, provide imagery for, or create apparel, including but not limited to shirts for BITNB (hereinafter the "BITNB/PARRY Apparel").

63.    That, as stated on BITNB's website, at http://bloodisthenewblack.com/category/stores (a copy of which is annexed hereto as Exhibit "F"), BITNB does business with *at least* eight stores which are located in the State of New York, including but not limited to Halcyon, Mini Mini Market, Oak, Urban Outfitters, 57th Street Collection, Icon, Patricia Field, Trash and Vaudeville, the latter five of which appear to have "brick and mortar" stores located in this County and District.

64.    That it is unknown as of the date of this complaint, the identities of and/all additional stores in the State and/or County of New York, with which BITNB does business and/or employed to sell the offending BITNB/PARRY apparel.

65.    That upon information and belief, several other stores, including but not limited to those listed on the BITNB website have online stores which have offered or offer for sale BITNB apparel or products.  That such websites are upon information and belief accessible to those consumers residing or present in the State of New York.

66.     That it is unknown as of the date of this complaint, the identities of all of the Online stores or stores located outside of New York – which offer products for sale over the internet, or which sell products to New York – with which BITNB does business and/or employed to sell the offending BITNB/PARRY apparel.

67.     That BITNB/PARRY Apparel was created, at least in part, to build PARRY's name as a recognizable consumer brand giving it some commercial value in the process. That stitched or printed on the back inside fabric of the T-shirts, or one or more of them, is both "Blood is the New Black" *and* "Jason Lee PARRY". That a copy of such inside "tag" is annexed hereto as Exhibit "G".

68.     That, upon information and belief, PARRY submitted various images to BITNB, including images of TEEN (see, inter alia, Exhibit "V", portions of which are redacted in order to protect the identity of TEEN, a minor). That, upon information and belief, at least three images of TEEN were selected by defendants, or one or more of them, to be created into apparel for Shirts as part of the BITNB/PARRY Apparel line.

69.     That PARRY's creation, photographing, reproducing, distributing, transmitting and involvement in the inclusion of the subject imagery of TEEN on shirts where such images will be viewed by untold number of persons in the State of New York and elsewhere over a span of many years demonstrates a high degree of negligence and/or gross negligence.

70.     That it is impossible to determine with any degree of certitude the number of persons in the State of New York and elsewhere who have seen or will see the offending shirts bearing TEEN's image – which are the subject of this complaint as described hereinbelow – nor the number of years into the future that such shirts will be worn in public.

71.     That the "toothpaste" is well out of the tube; that the products are not subject to recall for health or safety reasons pursuant to any Federal laws or Administrative agencies.

72.     That defendants, or one or more of them, engaged in a process where each defendant carefully selected, approved the use of, determined and/or employed Offending Image C of TEEN to be displayed on apparel to be sold to and seen by the general public.

73.     That defendants, or one or more of them, engaged in a process where each defendant carefully selected, approved the use of, determined and/or employed Offending Image D of TEEN to be displayed on apparel to be sold to and seen by the general public.

74.     That defendants, or one or more of them, had full knowledge that the image(s) of TEEN as employed on apparel would be viewable and seen by children and adults alike.

75.     That, upon information and belief, defendants, or one or more of them, selected and/or employed another image(s) of TEEN to be displayed on apparel. That the identity of such additional Image(s) is unknown to Plaintiffs as of the date of this complaint, but likely to be uncovered through discovery. That upon information and belief, such additional image was one of the images of TEEN taken by PARRY, which are annexed to the Complaint as Exhibit "E".

76.     That, upon information and belief, BITNB, inclusive of its employees, agents, officers, or directs, failed to request to examine or procure any model release, voucher, contract, agreement or a signed writing of any kind to reflect that PARRY had obtained the consent of the TEEN's authorized and legal representative(s) to employ the TEEN's image on shirts or any other item or in any other manner or media, including but not limited to advertising or marketing.

77.     That, upon information and belief, BITNB employs and/or compensates such persons who make such decisions on the suitability of shirt designs and/or images for sale in the United States and elsewhere. That, upon information and belief, BITNB, by its agents, employees and/or officers, deemed the BITNB/PARRY Apparel depicting images of TEEN to be appropriate and suitable for sale to its retail customers irrespective of the age(s) of any such consumer(s).

14

78.     That a cursory review of the BITNB/PARRY Apparel and the subject images of TEEN which appear thereon would indicate to the most casual of observers or untrained eyes that the image(s) of TEEN on the BITNB/PARRY Apparel were/are not suitable nor appropriate for retail sale as they depict a minor, *inter alia*, possessing alcohol, scantily clad, and/or with her legs spread, displaying what some viewers believe to be, public hair.

79.     That, upon information and belief, defendants, or one or more of them, commenced the manufacture and/or distribution of shirt(s) incorporating TEEN's image(s), portrait and likeness on or before June of 2011.

80.     That subsequent to such manufacture, said T shirts were offered by PARRY and/or one or more of the defendants to retailers by means as yet to be determined in an effort to provide said shirts to retailers for eventual retail sale to consumers.

### "OFFENDING APPAREL 1"

81.     That defendants BITNB, URBN, and PARRY, or one or more of them, employed, contributed to the creation of, design, manufacture, production, and/or distribution the Offending Image C of TEEN (Exhibit "C") on at least "Men's T-Shirts" (hereinafter "Offending Apparel 1"), copies of which are annexed hereto as Exhibit "H" (disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor).

82.     That the shirts at issue herein would not exist without the imagery.  That the imagery encompasses some 85% of the frontal surface area of each shirt.  That as a practical matter the "image is the product" and they are inextricably intertwined.

83.     That as referenced hereinabove, Offending Image C portrays TEEN in an offensive and scandalous manner.  That the "focal point" of Offending Image C portrays TEEN's physical area between the legs, which is upon information and belief, made to portray pubic hair.

84.     That the portrayal of TEEN is in a blatantly sexual manner – with her legs spread and/or without wearing a shirt or bra – forces TEEN to be the object of prurient interests and provides wallpaper for the likes of pedophiles and other adults with an unnatural attraction to underage children.

85.     That Offending Apparel 1 is offensive and libelous.

86.     That, upon information and belief, said Offending Apparel 1 was distributed to and received by URBN and/or its distributors and/or retail outlets by PARRY and BITNB, or one or more of them, or one/those on behalf of one or more of them.

87.     That upon information and belief, agents and/or employees of URBN had viewed and examined such Offending Apparel 1 prior to the receipt of same at retailers in the State of New York and elsewhere.   That, upon information and belief, subsequent to such inspection URBN by its agents, employees, and/or officers made a calculated business decision to purchase said shirts for the purposes of offering them for sale at the retail level in the State of New York and elsewhere.

88.     That, upon information and belief, URBN made a business decision that obtaining said Offending Apparel 1 for the purposes of selling same in their retail "brick and mortar" stores and at its website, www.urbanoutfitters.com, would yield profits and income to URBN.

89.     That, upon information and belief, URBN determined that said items were in conformity with its other "edgy" apparel items and utterly suitable for sale in the State of New York and elsewhere.

90.     That, upon information and belief, URBN employs and/or compensates such persons who make such decisions upon inspection of goods.  That, upon information and belief, URBN by its agents, employees and/or officers deemed the Offending Apparel 1 to be appropriate and suitable for sale to its retail customers irrespective of the age(s) of any such consumer(s).

91.     That a cursory review of the shirts and the images which appear thereon would indicate to the most casual of observers or untrained eyes that:

      a.   The person appearing in each image was clearly a child under the age of 18 years;

      b.   That the image (Offending Image C) incorporated onto one version of the T shirts (Offending Apparel 1) is a salacious, prurient image of a female child, wearing very short cut-off shorts with her legs widely spread, with her crotch area as the focal point of the image, and displaying what some observers believe to be pubic hair; and

      c.   That Offending Image C was/is not appropriate for retail sale nor in "good taste" as it depicts a minor in, at best, a questionable pose.

92.     That, upon information and belief, URBN and BITNB, or one or more of them, inclusive of its employees, agents, officers, or directs, failed to request to examine a model release so as to ascertain whether Offending Image C was (at least) model released.

93.     That, upon information and belief, URBN and BITNB, or one or more of them, failed to take any steps, whatsoever, to assure that selling the Offending Apparel 1 would not impose or infringe on anyone's right of publicity or privacy nor be in violation of any state or federal statute.

94.     That, upon information and belief, URBN, BITNB and PARRY, or one or more of them failed to make any inquiry as to whether distributing, advertising, promoting and/or selling the Offending Apparel 1 would be in violation of any state or federal statutes, whether civil or criminal notwithstanding the existence of any procedures or protocols which may or may not have existed designed to prevent such eventuality.

95.     That defendants, BITNB, URBN, and PARRY, or one or more of them, advertised, offered for sale, distributed, and/or sold Offending Apparel 1 in the State of New York. A copy of a sales receipt for at least one of such sales of Offending Apparel 1 is annexed hereto as Exhibit "I", with the shirt name redacted thereon in order to protect the identity of TEEN, a minor.

96.     That Offending Apparel 1 was offered for sale on *inter alia*, the Urban Outfitters website (www.urbanoutfitters.com) (see Exhibit "H"), in retail "brick and mortar" Urban Outfitters stores (see Exhibit "I"), and upon information and belief, additional stores, the identity and nature of which are as yet unknown to plaintiffs at this time, but believed will be learned through initial discovery.

97.     That URBN advertised Offending Apparel 1 by displaying same on its website (see Exhibit "H"), which not only promoted the sale of the shirt, but the Urban Outfitters Store, the "Blood is the New Black" line, and Jason Lee Perry as a photographer and/or clothing designer.

98.     That BITNB advertised Offending Apparel 1 by, *inter alia*, announcing or advertising the sale of said shirt on the BITNB Facebook website, which included an image of said shirt on said post. That a screenshot of such posting is annexed hereto as Exhibit "J" (disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor). That such offending post has not been removed by BITNB, but remains on its Facebook page as of the date of this Complaint notwithstanding plaintiff's request by counsel (repeated herein) that all use of TEEN's Image cease.

99.     That, upon information and belief, defendants BITNB, PARRY, URBN, or one or more of them, permitted, partnered with, provided, and/or otherwise participated in third party website(s)' (including but not limited to one or more of Like.com, ProntoStyle.com, AllThatCity.com, and PlumPillow.com) advertising the sale of, *inter alia*, Offending Apparel 1 at

Urban Outfitters. That copies of a portion of such advertising are annexed hereto as Exhibit "K" (disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor).

100.    That defendants, PARRY, BITNB and URBN, or one or more of them, advertised, offered for sale, distributed, and/or sold Offending Apparel 1 in the State of New York and elsewhere and that each and every defendant sole motivation in so doing is to make money. That no defendant has evidenced any desire to mitigate damages to TEEN though urged and requested to do so.

### "OFFENDING APPAREL 2"

101.    That, upon information and belief, defendants BITNB, URBN, and PARRY, or one or more of them, employed, contributed to the creation of, design, manufacture, production, and/or distribution the Offending Image D of TEEN – or a similar derivation thereof – (see Exhibit "D"; redacted here; disclosed to the Court) on *at least* "Muscle Tee(s)" (hereinafter "Offending Apparel 2"). Copies of such offending uses of Offending Image D of TEEN are annexed hereto as Exhibits "M", "O" and "P" (each of which are to be disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor).

102.    That the shirts at issue herein would not exist without the imagery. That the imagery encompasses some 85% of the frontal surface area of each shirt. That the image is inextricably intertwined with the product.

103.    That, upon information and belief defendants, BITNB, URBN, and PARRY, or one or more of them, advertised, offered for sale, distributed, and/or sold Offending Apparel 2 in the State of New York and elsewhere motivated solely by commercial desires to sell clothing.

### "OFFENDING APPAREL 3" (BRANDY & MELVILLE)

19

104.    That B&M is, upon information and belief, a boutique shop, with numerous stores in Europe and additional storefronts in New York, California and Hawaii.

105.    That, upon information and belief, defendant B&M employed, contributed to the creation of, design, manufacture, production and/or distribution the Offending Image D of TEEN – or a similar derivation thereof – (see Exhibit "D"; redacted here; disclosed to the Court) on *at least* "fringe shirts" (a/k/a "fringe later") and "tank tops" (a/k/a "canotta") (hereinafter collectively "Offending Apparel 3"). That at least the "fringe shirts bearing TEEN's image were produced on at least two different color fabrics. Copies of each of the aforesaid fringe shirts and tank top(s) are annexed hereto as Exhibit "L" (with the shirt name redacted as to include same could reveal the identity of TEEN, a minor; a portion of Exhibit "L" is to be disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor), with a sales receipt for same.

106.    That the shirts at issue herein would not exist without the imagery. That the imagery encompasses some 85% of the frontal surface area of each shirt and that the image is inextricably intertwined with the product.

107.    That it is unknown as of the date of this complaint how B&M came into possession of Offending Image D and/or Offending Apparel 3.

108.    That upon information and belief, B&M, and/or agents and/or employees of B&M, had viewed and examined such Offending Image D and/or designs or samples of Offending Apparel 3 prior to the production, manufacture, distribution, marketing, and/or sale of same and deemed same acceptable and appropriate for commercial use by it/them.

109.    That, upon information and belief, subsequent to such inspection and/or review, B&M, by its agents, employees, and/or officers, made a calculated business decision to buy and/or produce, manufacture, distribute, market, and/or sell said Offending Apparel 3 for the purposes of

offering them for sale at the retail level in the State of New York and elsewhere, and that doing same would yield profits and income to B&M.

110.   That, defendant B&M advertised, offered for sale, distributed, and/or sold Offending Apparel 3 in the State of New York and elsewhere without ever having viewed or been in possession of a contract, agreement or model voucher authorizing such use (see Exhibit "L").

111.   That B&M employed TEEN's image to promote, market, and/or advertise the B&M store, sale of B&M apparel, and/or sales of Offending Apparel 3 by displaying same in B&M retail store(s), propped up on shelves, and/or on prominently displayed on the store walls.

112.   That B&M benefitted commercially by such advertisement, promotion, marketing and/or displays of Offending Apparel 3.

113.   That stitched in the back inside tag of Offending Apparel 3 is "Brandy ♥ Melville" (see Exhibit "L"). That such branding on the Offending Apparel 3 falsely represents and/or implies that TEEN consented for B&M to employ her image on Offending Apparel 3. That such branding on the Offending Apparel 3 falsely represents and/or implies that TEEN endorses the B&M clothing line.

114.   That Offending Apparel 3 has been featured, as worn by "fashionistas", on various fashion blogs, drawing considerable attention and warranting numerous comments on same.

115.   That Offending Apparel 3 was featured on the Latino Magazine website, and was, upon information and belief, featured in the print edition of Latino Magazine.

116.   That requests to purchase Offending Apparel 3 have been made from all over the world.

117.   That, upon information and belief, one or more of the other defendants, including but not limited to PARRY, BITNB, or URBAN, or one or more of them, participated in the creation, design, manufacture, distribution, and/or sale of Offending Apparel 3.

## BOTH OFFENDING APPAREL 2 AND OFFENIDNG APPAREL 3

118.    That as explained hereinabove, Offending Image D portrays TEEN in an offensive and scandalous manner. That Offending Image D portrays TEEN in possession of alcohol, and apparently in a light of having consumed a significant portion of a six pack of beer.

119.    That falsely portraying TEEN as being in possession of and/or consuming beer (especially absent any disclaimers) is defamatory, libelous and constitutes libel per se on multiple grounds as set forth hereinbelow.

120.    That Offending Image D, and accordingly either or both of Offending Apparel 2 or Offending Apparel 3, is/are offensive and libelous.

121.    That, upon information and belief, defendants, or one or more of them employ and/or compensate such persons who make such decisions upon inspection of goods. That, upon information and belief, defendants, or one or more of them, by their agents, employees and/or officers, deemed the Offending Image D to be appropriate and suitable for sale on shirts to its retail customers.

122.    That a cursory review of the shirts (either or both of Offending Apparel 2 or Offending Apparel 3) and the image(s) which appear thereon would indicate to the most casual of observers or untrained eyes that:

   a.  That the Offending Image D, incorporated on the shirt(s), portrays a child under the age of 18 years holding four cans of Budweiser beer; and

   b.  That Offending Image D was/is not appropriate for retail sale nor in "good taste" as it depicts a minor in possession of alcoholic beverages; and

   c.  Employs the image of a minor promoting the use and/or consumption of beer; and

22

      d. Promotes underage drinking and portrays same as "hip", "cool" or otherwise appealing to minors.

123. That, upon information and belief, defendants, or one or more of them, inclusive of its employees, agents, officers, or directs, failed to request to examine a model release so as to ascertain whether Offending Image D was (at least) model released.

124. That, upon information and belief, defendants, or one or more of them, failed to take any steps, whatsoever, to assure that selling the Offending Apparel 2 and/or Offending Apparel 3 would not impose or infringe on anyone's right of publicity or privacy.

125. That, upon information and belief, defendants, or one or more of them failed to make any inquiry as to whether distributing, advertising, promoting and/or selling Offending Apparel 2 and/or Offending Apparel 3 would be in violation of any state or federal statutes, whether civil or criminal.

126. That the defendant(s)' portrayal of TEEN as possessing and/or consuming alcohol is false, defamatory and constitutes libel and libel per se. That the creation, manufacture, printing, distribution, and/or sale of each shirt, by the defendants, or one or more of them, serves to republish said libel.

127. That defendants, or one or more of them, advertised, offered for sale, distributed, and/or sold Offending Apparel 2 and/or Offending Apparel 3 in the State of New York and elsewhere.

**OFFENDING APPAREL 4 – THE UNKNOWN IMAGE**

128. That, upon information and belief, defendants BITNB, URBN, and PARRY, or one or more of them, employed, contributed to the creation of, design, manufacture, production, and/or distribution of at least one additional Offending Image of TEEN (the identity of which is unknown at the date of this Complaint but believed to be learned through discovery and believed to be one

of the images annexed to the Complaint as Exhibit "E" (redacted here; disclosed to the Court) on apparel (hereinafter "Offending Apparel 4").

129.     That the shirts at issue herein would not exist without the imagery. That the imagery encompasses some 85% of the frontal surface area of each shirt and the imagery is inexplicably intertwined with the item of Apparel.

130.     That, upon information and belief, Offending Apparel 4, is offensive and libelous.

131.     That the full nature and extent of the Offending Apparel 4 and defendant's use and involvement therein is unknown to plaintiffs at the date of this complaint, but likely to be learned through discovery.

132.     That, upon information and belief defendants, BITNB, URBN, and PARRY, or one or more of them, advertised, offered for sale, distributed, and/or sold Offending Apparel 1 in the State of New York.

### RETAILERS AND SALES TO BE DETERMINED THROUGH DISCOVERY

133.     That, upon information and belief, *additional entities* – unknown to plaintiffs as of the date of this complaint, but which are likely be to uncovered through discovery – where provided with one or more of the objectionable items and advertised and/or offered for sale and/or, distributed and/or sold Offending Apparel 1, Offending Apparel 2, and/or Offending Apparel 4 in the State of New York and elsewhere. That such knowledge and information is believed by Plaintiffs to be within the knowledge, custody, control and/or possession of defendants BITNB or PARRY, or one or more of them.

134.     That, upon information and belief, BITNB and PARRY, or one or more of them, **failed to take any steps, whatsoever, to assure that selling** the Offending Apparel 1, Offending Apparel 2 and/or Offending Apparel 4 would not impose or infringe on anyone's right of publicity or privacy.

135.    That, upon information and belief, BITNB and PARRY, or one or more of them

**failed to make any inquiry as to whether distributing, advertising, promoting and/or selling**

the Offending Apparel 1, Offending Apparel 2 and/or Offending Apparel 4 would be in violation

of any state or federal statutes, whether civil or criminal.

136.    That, upon information and belief, PARRY and BITNB, or one or more of them, or

one/those on behalf of one or more of them, **distributed** Offending Apparel 1, Offending Apparel

2 and/or Offending Apparel 4 to retailers for their review, selection, and or to sell at the retail

level.

137.    That, upon information and belief, third party retails and/or other entities, unknown

to plaintiffs at the time of the complaint but believed to be learned through disco very, **did in fact**

**sell** distributed Offending Apparel 1, Offending Apparel 2 and/or Offending Apparel 4 to

consumers.  That, upon information in belief, such sales occurred in, or were to consumers located

in, the State of New York.

138.    That such promotion and sales of apparel bearing TEEN's image and/or PARRY'S

photographs of TEEN were conducted by the defendants, or one or more of them, for the sole

purpose of deriving economic benefit(s), and that the defendants, or one or more of them, have

benefited thereby.

139.    That the failure of one or more of the defendants to either insist upon the production

of a legitimate model release and/or given the age of TEEN refrain from the distribution of the

offending items set forth herein is beyond the ken of any reasonable person and is wholly

negligent.

140.    That defendants, BITNB and PARRY, or one or more of them, **benefited** –

commercially, economically, or through the promotion of the BITNB and/or PARRY name – by

the marketing, advertising, offering for sale, distribution, and/or sale of Offending Apparel 1,

Offending Apparel 2 and/or Offending Apparel 4 by PARRY, BITNB and third party retailers, or one or more of them.

### ADVERTISING FOR BITNB, PARRY, URBN, OR ONE OR MORE OF THEM

141.   That, upon information and belief, PARRY entered into an agreement with BITNB whereby PARRY would provide and/or take photos for the advertising of the BITNB clothing line and/or BITNB apparel.

142.   That PARRY created photographs for the advertising of the BITNB line and/or apparel, which at least included a photograph of a female wearing a T-Shirt employing Offending Image D of TEEN (see Exhibit "M") (disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor). That such image has been displayed on at least the BITNB's Facebook webpage and upon information and belief, in other forms of advertisements for BITNB (see Exhibit "M").

143.   That BITNB additionally had a video created (hereinafter the "Promotional Video"), whereby PARRY participated by simultaneously taking still photographs while a videographer captured video portraying PARRY's photo session. That such video has been referred to as the BITNB "Fall 2011 lookbook". That relevant screen captures of such video are included within Exhibits "M" "N" and "O" (each Exhibits of which are to be disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor).

144.   That said Promotional Video includes the following credits: "Photography by Jason Lee Parry...video by Gandja Monterio... Model – Kelley Ash... Model – Jenny Sirney... Model Cody Hayduk... Stylist – Sophia De'Arbonne".

145.    That such video advertises shirts (including crew neck t-shirts and sleeveless shirts a/k/a muscle tees) which employ TEEN's image, including but not limited to Offending Image C on Offending Apparel 1 and Offending Image D on Offending Apparel 2 (see Exhibits "M", "N" and "O").

146.    That Promotional Video and the corresponding photographs are promotional and advertisements for the BITNB line and apparel. That such apparel includes the three offending t-shirts by PARRY and BITNB which are the subject of this litigation (see Exhibits "M", "N", and "O").

147.    That, upon information and belief, the defendants, or one or more of them, have benefitted commercially from *inter alia,* the publicity and/or exposure of the promotional video to consumers and/or the reviews or comments posted to the internet relating to said Video.

148.    That such Promotional Video is displayed on the home page of the BITNB website, with the caption "This video is NSFW", the latter acronym which means "Not Safe For Work" (see Exhibit "N"). That such video is also displayed on BITNB's Facebook site, Vimeo, the Urban Outfitters Blog website of http://blog.urbanoutfitters.com, and various blogs throughout the internet, including but not limited to the, "Complex Media & Design Blog". That copies of the foregoing displays and postings of such video are annexed hereto as Exhibit "O" (a portion of which is to be disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor).

149.    That, upon information and belief, BITNB and URBN, or one or more of them, included, post, permitted, and/or participated in the posting of the Promotional Video on the Urban Outfitters Blog website. That such video on the Urban Outfitters Blog website serves to advertise

the BITNB clothing line, PARRY's photography services, and/or the sale of one or more items of

BITNB apparel, including but not limited to Offending Apparel 1, at Urban Outfitters.

150.    That such video serves as a consumer advertisement for the BITNB fall and winter

2011 clothing line, some of the apparel of which was first offered for sale during the summer of

2011 both within and without the state of New York.

151.    That such video, which depicts at least two of the Offending Apparel items bearing

TEEN's image, was published and viewable by the general public subsequent to receipt of actual

written notice by Plaintiffs' Counsel.

152.    That such video depicts young people binge drinking, smoking, girls taking off their

shirts and exposing their breasts. That the women in the "promotional" video wearing the

offending t-shirts are often smoking and drinking the contents of *Budweiser* beer cans and/or what

are made to appear to be forms of hard alcohol.

153.    That at least one clip in the Promotional video depicts a model, who while

apparently drinking a can of Budweiser, is wearing Offending Apparel 2, which depicts TEEN as

holding at least one, if not four, cans of Budweiser (see Exhibit "M"). That, PARRY and/or

BITNB, by creation and/or use and/or implementation of the Promotional Video and/or images

taken by PARRY (see Exhibits "N", "O" and "M"), emphatically provide for the impression of

association of said image of TEEN with drinking beer, and/or the association of TEEN with

drinking beer.

154.    That, upon information and belief, at least one of the models portrayed in the

Promotional video was, at the time of filming and photographing, under the legal drinking age of

21 years.

155.    That the inclusion of TEEN's image in such video, including but not limited to

immediately following a clip of a female removing her shirt and exposing her naked breasts,

portrays TEEN in a negative light, associating TEEN with promiscuity, binge drinking, smoking, and/or rebellion against laws.

156. That such themes are extant throughout PARRY's work in general and in images in which TEEN appears specifically. That such style and portrayal of illegal, "edgy", questionable and/or rebellious themes is what defendants, or one or more of them, desired, sought, selected and obtained via the creation, distribution, advertising and sale of the offending works.

157. That, upon information and belief, Mitra Khayyam is one of the nominees for "Entrepreneur of the Year". That BITNB willingly participated in and/or created a video (hereinafter the "Entrepreneur Promotion Video") for use in connection with the marketing of, advertising of, promotion and/or campaign for Mitra Khayyam in connection with such Contest.

158. That said Entrepreneur Promotion Video prominently displays Offending Apparel 2 and employs same in the promotion, marketing and advertising of one or more of BITNB as a business, the sale of BITNB apparel, and Mitra Khayyam as a business person and candidate for "Entrepreneur of the Year". A copy of such offending use is annexed hereto as Exhibit "P" (a portion of which is to be disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor).

159. That, upon information and belief, said Entrepreneur Promotion Video was created with the intent of creating commercial and/or economic gain. That upon information and belief, said video serves as a tool to bring additional business to BITNB and/or Mitra Khayyam.

## PARRY'S WEBSITE

160. That PARRY had actual knowledge that TEEN was *15 years old* at the time the subject images were created. That notwithstanding such actual knowledge, PARRY for his own

commercial benefit, self-promotion and branding employed both the first and last name and the images of TEEN on his website.

161.   That PARRY's placement of TEEN's portrait, image and likeness on his website is in conjunction with numerous other photographs portraying girls and/or women in a dystopian world of sexually suggestive situations, nude, topless or partially nude, bleeding from the nose as if suffering from cocaine or methamphetamine addiction or having been physically abused, and in otherwise salacious vignettes (see Exhibits "B" and "Q", each of which are to be disclosed to the Court and all parties separately upon the entry of a Protective and/or Sealing Order, as to make same a public record would serve to reveal the identity of TEEN, a minor). That any of the aforesaid settings and/or collection(s) of images are utterly unsuitable environments for the inclusion of a photograph of a minor by any standards anywhere within the borders of the United States.

162.   That PARRY's website is open and accessible to the public, without regard to the age of the viewer, and without necessity of a password to enter and/or view same.

163.   That PARRY has on his website images of (apparently) a child who he photographed in a manner such as to portray the child in the midst and/or at the conclusion of an apparent suicide attempt or drug overdose from heroin or other intravenous illicit drug(s) lying in an empty bath tub in proximity to several intravenous needles and a spoon of the type and nature often used to "cook' illicit narcotics including but not limited to heroin (see within Exhibit "B").

164.   That upon information and belief, the viewer is inexorably led to the conclusion and/or given the visual impression that the young person has committed suicide and/or attempted suicide and/or has ingested narcotics via injection rendering the person incapable of movement or dead. That PARRY's inclusion of TEEN on a website with similarly offensive and shocking imagery is harmful to TEENs professional and personal reputation (see Exhibits "B" and "Q").

165.    That upon information and belief, one or more of the girls appearing on PARRY's website, http://jasonleeparry.com, *appear* to be under the age of 18 and PARRY makes no written representation(s) of any kind that one or more of the girls on his site are over the age of 18 or in fact are of any particular age (see Exhibits "B" and "Q"). That upon information and belief, such ambiguity is either intentional so as to make the site more attractive to its male viewers and/or grossly negligent.

166.    That upon information and belief, a large portion of the viewers of PARRY's website in fact form a belief or are otherwise led to believe that one or more of the "girls" portrayed therein is/are under the age of 18 years, there being no representation nor attempt to dissuade the viewer from forming such belief as to the ages of any of the girls.

167.    That upon information and belief, PARRY's website is designed and intended to and does attract a predominantly male audience who view the site for prurient reasons.

168.    That, upon information and belief, said website is not designed to attract the attention of advertising agencies, art buyers, creative directors, publishers or others who have legitimate business needs to hire freelance photographers for the purposes of creating legitimate advertising or photography.

169.    That the content of PARRY's website is utterly inconsistent with other photographers seeking to promote their work to potential and/or existing legitimate clients in the hopes of securing additional photographic assignments and/or image licensing.

170.    That upon information and belief, PARRY'S website is not in fact a promotional tool used by him to secure and procure new business from new clients and additional business from existing clients.

171.    That  neither of TEEN'S parents nor anyone with a valid power of attorney to execute any agreement on behalf of teen, ever consented to the use of TEEN'S images on

31

PARRY'S promotional materials, website, products nor in conjunction with an array of utterly tasteless photographs portraying apparent drug addiction, nudity and violence.

172.    That PARRY"s website is accessible to viewers of all ages and no warnings of any kind with respect to the nature of the content therein perhaps being offensive to some and/or unsuitable to minors is offered.

173.    That PARRY's portrayal of TEEN and inclusion in his website (replete with name) is that of a minor of extremely low morals, cavorting with and/or viewed together with: nude, partially nude, sexually charged, drug addled, drug abusers, girls who are being restrained or tortured with a recurring theme of blood streaming from the nose; girls who *appear* to be under the age of 18 years.

174.    That upon information and belief, the total concept, feel and impression left upon an observer viewing PARRY's website is that of revulsion due to its offensive nature. That such portrayal of TEEN is false, defamatory and damaging to TEEN in her chosen profession.

175.    That upon information and belief, PARRY employed images of TEEN on his website, while motivated by economic benefits of money and the association with TEEN which served to give the impression to third parties that PARRY had by virtue of his professional reputation, access to upper tier models in general and TEEN in particular to portray in any manner he chose. That such impressions were and are utterly false, but that PARRY represented same to the general public and photographic community nonetheless.

176.    That PARRY traded on the reputation and recognition factor(s) of Teen.

## NOTICE OF CLAIMS AND POST-NOTICE EVENTS

177.    That by letters, dated July 1, 2011, copies of which are annexed hereto as Exhibits "R", "S", "T", and "U" (with names and information redacted which would serve to reveal the identity of TEEN, a minor, and included here without the exhibits to such letters), TEEN's counsel

notified PARRY, BITNB, URBN, and B&M, respectively, in a detailed manner of the facts and circumstances complained of herein, advised them to preserve all relevant documentation and noted the potential consequences for the destruction of evidence.

178. That as of the date of this complaint B&M has failed to respond to Plaintiff's counsel's notice letter.

179. That PARRY responded to counsel for Teen by e mail dated July 5, 2011 a copy of which is annexed hereto as Exhibit "V" (with names and information redacted which would serve to reveal the identity of TEEN, a minor) wherein he readily admitted to *inter alia,* his failure to obtain a model release. Notwithstanding such admission and PARRY'S statement that, *"Whatever the shirts have made I think [Redacted; [name of TEEN] ] should get 100% of it!"* [emphasis added], sales of the subject shirt and use of the subject images continued thereafter to a date to be determined though discovery.

180. That as of the date of this Complaint, defendants BITNB and URBN have failed to disclose the full nature and extent of their respective uses of TEEN's image(s), inclusive of date(s) of which such offending apparel was available for sale, despite due requests for such information by Plaintiff's counsel. That such information is unknown to Plaintiff's, such being within the custody, possession or control of defendants, or one or more of them.

181. That notwithstanding repeated requests made to PARRY *and his retained legal counsel,* and notification that this complaint would be filed, images of TEEN **inexplicably remain** on (at least) PARRY'S website and elsewhere on the Internet, as of this writing (see Exhibit "Q" (to be provided to the Court and all parties separately upon the entry of a Protective and/or Sealing Order as to make same a public record would reveal the identity of TEEN, a minor).

182. *That subsequent to notice from plaintiff's counsel,* PARRY participated in a *public* exhibit of his work, which featured Offending Image C and Offending Image D. That such use of

TEEN's Image(s), was available to the public in person, and publicized on the Internet with images showing Offending Image C and Offending Image D of TEEN. A copy of such offending use of TEEN's images in such Exhibition is annexed hereto as Exhibit "W" (to be provided to the Court and all parties separately upon the entry of a Protective and/or Sealing Order as to make same a public record would reveal the identity of TEEN, a minor).

183.    That, upon information and belief, PARRY employed Offending Image D of TEEN in connection with advertising and/or promotion of said exhibition – including but not limited to internet articles by third parties, flyers, and posters – which featured images of TEEN (see Exhibit "W").

184.    That the willfulness of PARRY's unlawful acts with respect to and inflicted upon a child especially post notice, stretch credulity and cannot be adequately described by any combination of words or pictures available to plaintiff.

185.    That PARRY'S exhibition of TEEN's image, portrait, and likeness serves to promote and advertise PARRY'S photography business and services, as well as his name, reputation, and brand. That, upon information and belief, such serves to procure a commercial and economic benefit for PARRY.

186.    That TEEN is a model of considerable reputation and PARRY's refusal to withdraw the offending and/or illegal imagery from the market place is solely motivated by his desire to receive attention, trade on and receive publicity resulting from the notoriety and reputation of TEEN MODEL.

187.    That such continued use of TEEN's image, portrait and likeness within and without the State of New York by PARRY – notwithstanding PARRY's knowledge of TEEN'S age, the lack of consent and the requests issued to cease such usages (as set forth herein) – manifests PARRY's desire to commercially benefit from his association with TEEN, notwithstanding the

34

risks of liability attached to such knowing and intentional use and evidences utter indifference to the damages inflicted upon TEEN.

188.    That in addition to the uses of imagery complained of herein, the failure to remove the name and offending imagery of TEEN notwithstanding repeated requests to do so demonstrates PARRY'S utter and complete disregard for:

        a.    The welfare of TEEN;

        b.    The laws of (at least) the State of New York;

        c.    The concept of mitigating damages;

189.    That the failure to remove the imagery of TEEN demonstrates PARRY'S desire to trade on TEEN'S name and recognition in order to attract more business and attention to him for his own commercial benefit at the expense of TEEN.

190.    That TEEN's portrait, image, and likeness have been widely publicized to the public via, *inter alia*, print editorials and advertisements, television, and the Internet.

191.    That TEEN's portrait, image, and likeness are highly recognizable and valuable; that defendants, or one or more of them have traded on TEEN's portrait, image and likeness, and commercially benefitted thereby.

192.    That the continued use of images of TEEN post notice and post retention of legal counsel by PARRY, demonstrate an additional degree of brazen willfulness warranting a substantial award of punitive or exemplary damages as the legislature intended, to punish this defendant and deter others so inclined to act in an intentional, indeed, maniacal manner *toward a minor.*

## PROTOCOLS AND PROCEDURES

193.    That commencing in or around 2003 and continuing into 2011, URBN has reportedly been confronted with a series of controversies concerning the content of T shirts and

items marketed by its stores. That, as reported in the press, URBN has during these years, *inter alia*: incurred the wrath of the NAACP concerning its T shirts "Ghettopoloy", which are claimed to be racist; been under scrutiny by the Anti-Defamation League regarding T shirts bearing the image of a Jewish girl surrounded by ' $ ' signs; been subjected to a reported 250,000 e mails protesting an allegedly anti-Christian game being sold by URBN; been confronted by protesters in Philadelphia regarding URBN's (then) new Christmas ornament designed in the shape of a gun in a year wherein a record number of murders were perpetrated in that city; faced criticism from both Jewish and Palestinian groups regarding the use of a ***child on a t shirt carrying an AK 47*** automatic weapon; and faced assorted claims alleging the theft of intellectual property by URBN, ultimately causing URBN to pull the subject merchandise from its shelves.

194.    That causing controversy and/or offending certain groups both in the United States and abroad has virtually become a marketing tool of URBN whose target audience at its 140 retail stores worldwide is by its own admissions the, "18 – 30 year old crowd". That "cutting edge" T-shirts have traditionally been a mainstay of URBN's product line since the store's birth in the 1970's. That upon information and belief, being on the cutting edge is part of the marketing strategy of URBN.

195.    That the "Blood is the New Black" t-shirt line was developed and serves the purpose, *inter alia*, to display the works of emerging artists, designers and photographers in order to propel their careers and support the so-called "underground art movement" through design collaborations.

196.    That BITNB represents that its clothing line provides collaborating artists with an avenue to explore social topics of his/her choice, while also bringing attention to issues, which may not be part of the mainstream discourse, and that those daring enough to wear BITNB products instantly become a walking canvas and conversation piece.

197.   That BITNB has produced apparel concerning the topics of, *inter alia*, sex, money, alcohol, drugs, underage rebellion, physical abuse, and the binding and gagging of women via chains or other objects.

198.   That upon information and belief, BITNB has faced public scrutiny for selling a t-shirt which depicted a bound and restrained female, the shirt of which has been termed by the public and  referred to in the press  as **"rape chic"**.

199.   That causing controversy and/or offending certain groups both in the United States and abroad has virtually become a marketing tool of BITNB. That BITNB's target audience is, upon information and belief, teenagers and young adults.  That "cutting edge" T-shirts have  been a mainstay of BITNB's product line since the store's birth in  2004.

200.   That BITNB, by or through its representatives, including but not limited to Mitra Khayyam, represent that BITNB permits artists to employ their work on apparel with no fear of censorship.

201.   That, in part, as a result of the forgoing legal controversies and public scrutiny over the content of defendant(s)' apparel, URBN and BITNB, or one or more of them, have, upon information and belief, procedures and protocols in place to assure that any and all licenses or permissions for the use of intellectual property or imagery containing the image, portrait, likeness or photograph of any person of any age were/are obtained.

202.   That, upon information and belief, B&M has procedures and protocols in place to assure that any and all licenses or permissions for the use of intellectual property or imagery containing the image, portrait, likeness, or photograph of any person of any age were/are obtained.

203.   That at all times relevant herein, URBN had access to in house counsel and/or outside legal counsel and others trained in the areas of licensing, permissions, intellectual property and related areas of the law so as to assure that URBN was at all times in compliance with federal

37

and state(s) laws relative to *inter alia,* copyright, licensing, rights of publicity, rights of privacy and particularly those statutes, codes and laws relating to the use of children and/or the portrayal and/or promotion of alcoholic beverages in the instant case, beer.

204.    That upon information and belief, B&M and BITNB, or one or more of them, had access to in house counsel and/or outside legal counsel and others trained in the areas of licensing, permissions, intellectual property and related areas of the law so as to assure that URBN was at all times in compliance with federal and state(s) laws relative to *inter alia,* copyright, licensing, rights of publicity, rights of privacy and particularly those statutes, codes and laws relating to the use of children and/or the portrayal and/or promotion of alcoholic beverages in the instant case, beer.

205.    That, upon information and belief, defendants or one or more of them, had access to attorneys or others with expertise in matters of intellectual property and/or rights of publicity or promotion of individuals, who were in a position such that he/she/they could prevent the dissemination of such materials if he/she/they determined based on his/her/their professional judgment and experience that the creation, production, dissemination, publication, manufacture, distribution, marketing, advertising, or sale of such materials would be violative of law, civil and/or criminal statue(s) or regulation(s) and/or expose the respective defendant and/or its employees, agents, distributors, franchisees to corporate or individual, civil or criminal liability or regulatory intervention or prosecution thereby.

206.    That, upon information and belief, neither URBN, BITNB, B&M, nor one or more of them, submitted the proposed item(s) of apparel bearing TEEN's image(s), to their attorneys and/or to the attorneys representing any other defendant herein, or to those with authority to review, edit and approve or reject such materials for any legal reason whatsoever.

207.    That at all times relevant herein, if in fact one or more of the defendants failed to avail itself of the advice of legal counsel or a substantial equivalent, then such failure constitutes abject and gross negligence.

208.    That defendants URBN, BITNB and B&M, or one or more of them, should have possessed knowledge with respect to *inter alia* the legal and business and trade practices as they relate to the preparation, creation, dissemination of advertising and promotional materials and the licensing of intellectual property including but not limited to the use and licensing of photographic images in and on products including but not limited to apparel, customarily sold and marketed by it/them in the State of New York and elsewhere.

209.    That Section 50 of the New York Civil Rights laws states:

> "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, *is guilty of a misdemeanor.*" [emphasis added].

210.    That Section 51 of the New York Civil Rights Law provides civil remedies to an aggrieved party which include compensatory damages, punitive damages and a right to an injunction. That said Section is annexed in its entirety as Exhibit "X" hereto

211.    That many other States of the United States including but not limited to California, require that a release or similar executed document exist in order that an image may be employed in connection with the sale or promotion of a product, service, entity or organization or otherwise employed for commercial or trade purposes.

212.    That URBN, BITNB and B&M, or one or more of them, maintain and operate brick and mortar stores in states other than New York which similarly require the executed consent of any person whose image, name, portrait or likeness is to be employed for commercial purposes.

213. That upon information and belief, neither URBN, BITNB, B&M, nor one or more of them, inclusive of their officers, directors, employees or agents, performed any due diligence regarding the provenance of the subject images nor whether the use of the offending image(s) of TEEN would violate any laws civil or criminal, or the rights of any individual in any State of the United States including but not limited to the laws of the State of New York.

214. That if in fact, URBN, BITNB, B&M, or one or more of them, attempted to ascertain the provenance of the imagery and/or procure the necessary permissions, then it/they failed to conduct and/or complete any such attempt(s) in a competent manner.

215. That *had* defendants, or one or more of them, inclusive of their officers, directors, employees, agents or attorneys, exercised the barest of due diligence and/or any degree of business judgment, defendants, or one or more of them, *would* have determined that the offending image(s) of TEEN was/were inappropriate for use on apparel for sale to members of the general public (regardless of age), which would be seen by untold thousands of people for years to come.

216. That *had* defendants, or one or more of them, inclusive of their officers, directors, employees, agents or attorneys exercised the barest of due diligence and/or any degree of business judgment, defendants, or one or more of them, *would* have determined that, in any event, a written, signed model release was required to sell such shirts in many states of the United States and in the State of New York in particular.

217. That had URBN, BITNB and B&M, or one or more of them, consulted with legal counsel, vetted the offending items and/or followed reasonable procedures and protocols relative to the use of the subject imagery of TEEN it would never had permitted the purchase of said shirts nor the offering for sale of same to the consuming public at the retail level.

218. That such process would naturally have included an examination of the content of PARRY's prior work or contemporaneous photography as appearing on his website. That such examination would have instantly revealed the character, nature and associative work of PARRY.

219. That good business practice dictates a heightened level of scrutiny when employing the image of a child for any commercial purpose and/or specifically using the image of a child in a pose that connotes sexuality, and/or the image of an alcoholic beverage and/or the use of a child in conjunction with the portrayal of an alcoholic beverage.

220. That advertising, promotional or commercial use of images referencing or portraying matters relating to *inter alia*: alcoholic beverages, drug use (both legal and otherwise), nudity, abuse, sexually transmitted diseases, herpes, sexually explicit materials, illegal activities, unethical behavior, communicable diseases or use of a child under the age of 18 years are commonly termed in the advertising, photography and modeling industries as "special subjects" or "sensitive subjects" or are referred to using other substantially similar nomenclature so as to distinguish or "flag" such advertising from more conventional or routine products. That such references are common in *inter alia:* advertising, photography, stock photography, modeling, publishing, public relations, licensing and promotional industries.

221. That it is considered good business practice and is indeed the routine custom and practice of companies licensing intellectual property and/or securing rights of publicity to have potential advertisements, product or promotional materials embodying text and/or photographs relating to the types of categories referred to in Paragraph "220" hereinabove, particularly those including children, reviewed or "vetted" prior manufacture and/or dissemination to consumers, third parties to assure that such material is not violative of industry codes, child labor laws, contract, statute, law or regulation or otherwise likely to engender civil or criminal litigation/prosecution and/or regulatory intervention which may result in monetary fines, removal

41

of product from the stream of commerce and/or prosecution of individual employees, agents, officers or directors by state and/or federal authorities.

222.    That all defendants, or one or more of them, knew or should have known through the use of reasonable judgment that the use of a minor holding beer, as printed on apparel, was and is, an utterly inappropriate imagery to employ on shirts for sale to members of the general public.

223.    That all defendants, or one or more of them, knew or should have known through the use of reasonable judgment that the use of a child in a salacious and sexually provocative pose was an utterly inappropriate image to employ on shirts for sale to members of the general public.

224.    That the use of child 15 years of age (as here) in a "sensitive subject" consumer item of apparel visible to the general public for countless years to come  would be aberrational, exceptionally rare and not conducted or permitted in the normal or usual course of business.

225.    That no "exigent" circumstances existed herein requiring defendants, or one or more of them, to use the image of any child or of TEEN in particular as the focal point of apparel promoting or glorifying the consumption of beer by minors or an apparently sexually salacious minor, clearly under the age of sexual and/or alcohol consent in the State of New York and most if not all states of the United States.

226.    That all images relevant herein was staged, styled and created by PARRY and that no such images were created in connection or conjunction with any newsworthy event or story.

227.    That one or more of the defendants by at least an officer, director, employee, agent, store manager, assistant store manager or stock boy, knew or should have known that the use of a child in the manners set forth hereinabove was/were inappropriate at best and possibly violative and civil and/or criminal laws.

228.    That all defendants, or one or more of them, knew or should have known through the exercise of reasonable judgment that no valid consent from anyone with legal authority for such offending use(s) of TEEN's image, portrait or name existed and/or could possibly exist.

229.    That pairing a minor with an alcoholic beverage on an item of apparel is on its face grossly negligent and/or evidences a reckless disregard for the interests of a child.

230.    That upon information and belief, defendants, or one or more of them, were motivated solely be economic greed to a degree rarely if ever, evidenced in the history of apparel retailing.

231.    That URBN, BITNB, B&M, or one or more of them, inclusive of their officers, directors, employees and/or agents, was/were wholly negligent in permitting and making sales of clothing containing the unauthorized use of highly questionable material.

232.    That URBN, BITNB, B&M, or one or more of them, inclusive of their officers, directors, employees and/or agents, were negligent in failing to have procedures, protocols and processes intended and designed to prevent the use, creation, production, manufacture, distribution, marketing, promotion, advertising, and/or sale of such offending apparel bearing TEEN's image to children and/or adults.

233.    That the complained of acts of negligence and/or willfulness regarding defendant(s)' use(s) of TEEN's image(s), occurred in the State of New York and elsewhere.

234.    That the aforesaid unauthorized use(s) of TEEN's image(s), by the defendants or one or more of them, occurred in the State of New York and elsewhere.

235.    That defendants, or one or more of them, caused such offending image(s) of TEEN to appear and continue to appear in the State of New York and elsewhere.

236.    That the full nature and extent of defendants or one or more of the, use of plaintiffs' images and likeness is yet to be ascertained by plaintiff, such information being in the sole custody and control of the defendants.

237.    That as a proximate result of the actions of defendant(s)' complained of herein, TEEN has suffered and will continue to suffer emotional and economic harm and pecuniary loss. That the offending acts of the defendants, or one or more of them, as complained of and specified with particularity herein, have materially and adversely affected TEEN's modeling career. That said losses are not speculative.

238.    That plaintiffs have sought non-judicial intervention and resolution of the issues complained of herein pursuant to Federal Rule 11.

239.    That the defendants, or one or more of them, have no defense(s) at law to the claims set forth herein.

## FIRST CLAIM FOR RELIEF
## VIOLATIONS OF NEW YORK CIVIL RIGHTS LAW §50 AND §51
## AGAINST PARRY, BITNB AND URBN

240.    That the New York Civil Rights Law §§ 50 and 51 specifically proscribe the use of an individual's name, portrait or picture for trade, commercial or advertising without the written consent of said individual. That said statutes provide *inter alia*, that compensatory and exemplary damages are recoverable thereunder (Sec. 51).

241.    Section 50 evidences a strong public policy against such unauthorized use, defining any such offense as a *misdemeanor*. Section 51 enumerates civil remedies available thereunder including but not limited to money damages in the form of compensatory and/or exemplary damages and injunctive relief.

242. Defendant(s)' proscribed uses of TEEN'S image, portrait, and likeness are in direct violation of the New York Civil Rights Law § 50, 51 as there existed/exists no executed written consent to the specific uses complained of herein.

243. That defendants PARRY and BITNB, or one or more of them, used and employed Offending Image C (see Exhibit "C") for trade purposes by employing same on T-shirts, and participating in/organizing/agreeing for the creation, manufacture, and/or production of said shirts, and/or the distribution of said shirts to retailers.

244. That Defendants PARRY, BITNB and URBN, or one or more of them, used and employed Offending Image C (see Exhibit "C") for trade purposes by offering for sale and selling Offending Apparel 1 to consumers.

245. That Offending Apparel 1, bearing the words "Blood is the New Black" and "Jason Lee PARRY" on the inside back "tag" of such Apparel, was sold by URBN (on behalf of PARRY and/or BITNB) to consumers in the State of New York in this district on inter alia, June 28, 2011 (a copy of the receipt for such sale is annexed hereto as Exhibit "I"). That, upon information and belief, each of defendants PARRY, BITNB and URBN, or one or more of them, participated in and/or contributed to that sale of Offending Apparel 1.

246. That Defendant URBN, used and employed Offending Image C for trade and/or advertising purposes by entering into an agreement with BITNB and PARRY, or one or more of them, to offer for sale and sell Offending Apparel 1 to consumers in exchange for, upon information and belief, a monetary value and/or economic incentive.

247. That upon information and belief, one or more of defendant(s)' use(s) of TEEN's Image, as complained of herein, occurred in the State of New York.

248. That defendants PARRY, BITNB and URBN, or one or more of them, employed TEEN's Image for advertising and/or trade purposes by employing same, or consenting and/or

authorizing URBN to employ same, on the URBN website, www.urbn.com. That such display

serves to advertise not only the potential sale of Offending Apparel 1, but the URBN brand and

company, the BITNB brand, products, and company, and PARRY's "line of apparel", brand,

name, and photography business and services.

249.    That defendant BITNB employed TEEN's Image (Offending Image C) for trade

and/or advertising purposes by displaying an image of Offending Apparel 1, and a link to the

Urban Outfitters website to purchase said Apparel on the BITNB's Facebook page of

www.facebook.com/BloodIsTheNewBlack. That such display advertised and promoted, *inter alia*,

the BITNB clothing line, PARRY's involvement in same, and potential sales of Offending Apparel

1.

250.    That defendants BITNB and/or PARRY employed Offending Image C for trade

and/or advertising purposes by employing and/or assisting in employing same, as printed on

shirt(s) and worn by model(s) in a video "lookbook" for the BITNB "fall line" and/or "fall and

winter line" as well as, upon information and belief, photographic advertisements by PARRY for

same.

251.    That said video "lookbook" has appeared and continues to appear on the homepage

for the BITNB website. That, uponinformation and belief, BITNB and/or PARRY have

distributed said video "lookbook" to others in an effort to promote and/or advertise the BITNB line

and apparel. That said video "lookbook" has been distributed across the internet in association

with the BITNB and PARRY name.

252.    That defendant URBN employed Offending Image C for advertising and trade

purposes by displaying Offending Apparel 1 in and/or throughout URBN retail stores in the State

of New York and elsewhere. That such unauthorized display promotes and/or advertises inter alia,

the BITNB brand and apparel, PARRY's brand, name, apparel and photography business and services, and potential sales of Offending Apparel 1.

253.    That, upon information and belief, each of the aforesaid advertisements, was intended to and did confer upon defendants, or one or more of them, and economic benefit.

254.    That PARRY employed Offending Image C for advertising and/or trade purposes by employing same in at least one exhibition of his photography and on his website, either or both of which promoted and advertised PARRY's name, brand, and photography business and services. That such offending use(s) of TEEN's image were, upon information and belief, intended to and did boost PARRY's reputation in the photography and/or fashion and/or art world, and/or bestow upon him an economic benefit.

255.    That the aforesaid use(s) of TEEN's image, portrait and likeness for advertising and trade purposes is in violation of Sections §§50, 51 of the New York Civil Rights Law.

256.    That upon information and belief, the aforesaid offending use(s) of TEEN's Images by PARRY, BITNB and URBN, or one or more of them, *continued subsequent to its receipt of written notice* as to the violative nature of said use(s).

257.    That at no time did the defendants, or one or more of them, seek or obtain a written, signed model release, voucher, contract, license or permission to employ the images of the TEEN either on T shirts, websites, videos, advertisements, *nor for any other purpose whatsoever*.

258.    That such failure by the defendants, or one or more of them, was either negligent and/or grossly negligent.

259.    That PARRY's conduct is so egregious that after considerable investigation by plaintiff's counsel pursuant to Federal Rule 11 and otherwise, and upon an examination and/or review of all leading cases brought pursuant to the New York Civil Rights Law §§ 50, 51 since the statutes' inception, plaintiffs verily believe the case to be unprecedented.

47

260.   That defendants PARRY, BITNB and URBN, or one or more of them, held out to the general public that they had the right to license, employ on t-shirts to be offered for commercial sale, distribute, and/or sell TEEN's image (Offending Image C).

261.   That defendants PARRY, BITNB and URBN, or one or more of them, possessed or acquired *actual knowledge* that they had no written authorization, consent or license from TEEN, or one legally authorized to provide same on her behalf, to use her image in any manner.

262.   That PARRY knew that he lacked such authorization from on or about March of 2010 when he photographed TEEN and did not obtain nor even attempt to obtain a written executed model release or equivalent.  That PARRY's actions are those of a person believing to be excepted by the statutes and laws of this state, any other state or this country.

263.   That, upon information and belief, BITNB and URBN, knew, from the time that they first received the Offending Image and/or Apparel (the specific dates of which are unknown to Plaintiffs as of the date of this Complaint but believed to be learned through discovery) that they did not have a written model release from TEEN or one legally authorized to sign same on her behalf for the offending uses of her image, as specified herein.

264.   That no later than Plaintiff's counsel's letter to the defendants, or one or more of them, dated July 1, 2011, defendants, or one or more of them, had actual knowledge that no written executed model release existed for the offending uses of TEEN's image, as specified herein.

265.   Notwithstanding such knowledge, one or more of the defendants continued to employ Plaintiff's image in violation of law.

266.   That the full nature and extent of PARRY's, BITNB's and URBN's, or one or more of their, use(s) of TEEN's image is unknown as of the date of this Complaint, such information being within each of such defendant's custody and control.  That said information will likely be unearthed by Plaintiffs during discovery.

267.     As a result of the foregoing and pursuant to said statutes, but not to the exclusion of any other remedies under common law or statute, plaintiff TEEN has been damaged and is entitled to relief as per statute in the forms of compensatory damages, in a sum ultimately to be determined by this Court but is upon information and belief not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000), punitive or exemplary damages in a sum ultimately to be determined by this Court but upon information and belief in a sum of not less than FIVE MILLION DOLLARS ($5,000,000) and costs and expenses incurred by plaintiffs in the prosecution of this action together with an Order from this Court permanently restraining the defendants herein from utilizing the image or likeness of the plaintiff TEEN in any manner or for any purpose whatsoever.

## SECOND CLAIM FOR RELIEF
## VIOLATIONS OF NEW YORK CIVIL RIGHTS LAW §50 AND §51
## AGAINST ALL DEFENDANTS

268.     That the New York Civil Rights Law §§ 50 and 51 specifically proscribe the use of an individual's name, portrait or picture for trade, commercial or advertising without the written consent of said individual.  That said statutes provide *inter alia*, that compensatory and exemplary damages are recoverable thereunder (Sec. 51).

269.     Section 50 evidences a strong public policy against such unauthorized use, defining any such offense as a *misdemeanor*. Section 51 enumerates civil remedies available thereunder including but not limited to money damages in the form of compensatory and/or exemplary damages and injunctive relief.

270.     Defendant(s)' proscribed uses of TEEN'S image, portrait, and likeness are in direct violation of the New York Civil Rights Law § 50, 51 as there existed/exists no executed written consent to the specific uses complained of herein.

271.     That defendants PARRY, BITNB, B&M and upon information and belief, URBN, or one or more of them, used and employed Offending Image D (see Exhibit "D") for trade

49

purposes by employing same on shirts, and participating in/organizing/agreeing for the creation, manufacture, and/or production of said shirts, and/or the distribution of said shirts to retailers.

272.    That Defendants PARRY, BITNB, B&M, and upon information and belief, URBN, or one or more of them, used and employed Offending Image D (see Exhibit "D") for trade purposes by offering for sale and selling Offending Apparel 2 to consumers.

273.    That, upon information and belief, Offending Apparel 2, bearing the words "Blood is the New Black" and "Jason Lee PARRY" on the inside back "tag" of such Apparel, was sold by retailers (on behalf of BITNB and/or PARRY) to consumers in the State of New York in this district. That, upon information and belief, each of defendants PARRY, BITNB and URBN, or one or more of them, participated in and/or contributed to that sale of Offending Apparel 2.

274.    That, upon information and belief, URBN, offered for sale, promoted, advertised, and/or sold Offending Apparel 2 to consumers in the State of New York.

275.    That, upon information and belief, URBN, used and employed Offending Image D for trade and/or advertising purposes by entering into an agreement with BITNB and PARRY, or one or more of them, to offer for sale and sell Offending Apparel 2 to consumers in exchange for, upon information and belief, a monetary value and/or economic incentive.

276.    That B&M employed TEEN's image (Offending Image D) for advertising and/or trade purposes, by employing same, on shirts, and participating in/organizing/agreeing for the creation, manufacture, and/or production of said shirts, and/or the distribution of said shirts to retailers, including but not limited to various B&M store locations.

277.    That B&M used and employed Offending Image D (see Exhibit "D") for trade purposes by offering for sale and selling Offending Apparel 3 to consumers.

278.    That B&M sold Offending Apparel 3 (in the form of "fringe shirts" and "tank tops", the former of which was sold in the form of two different color fabrics) to consumers in the State

of New York in this District at least on June 28, 2011.  That copies of the offending shirts and tank top(s), as well as a sales receipt for same are annexed hereto as Exhibit "L".

279.   That, it is unknown pre-discovery, of the involvement of the other defendants in this action towards the use(s) of TEEN's Image for advertising and/or trade purposes by B&M.  That such information is likely to be learned through routine discovery.

280.   That upon information and belief, one or more of defendant(s)' use(s) of TEEN's Image, as complained of herein, occurred in the State of New York and elsewhere.

281.   That, upon information and belief, defendants PARRY, BITNB and URBN, or one or more of them, employed TEEN's Image (Offending Image D) for advertising and/or trade purposes by employing same on one or more of their website(s) and/or in other manners for trade and/or advertising purposes.

282.   That website display serves to advertise within and without the State of New York, not only the potential sale of Offending Apparel 2, but the URBN brand and company, the BITNB brand, products, and company, and PARRY's "line of apparel", brand, name, and photography business and services.

283.   That defendants BITNB and/or PARRY employed Offending Image D for trade and/or advertising purposes by employing and/or assisting in employing same, as printed on shirt(s) and worn by model(s) in a video "lookbook" for the BITNB "fall line" and/or "fall and winter line" as well as photographic advertisements by PARRY and/or BITNB for same.

284.   That said video "lookbook" has appeared and continues to appear on the homepage for the BITNB website.  That, upon information and belief, BITNB and/or PARRY have distributed said video "lookbook" to others in an effort to promote and/or advertise the BITNB line and apparel.  That said video "lookbook" has been distributed across the internet in association with the BITNB and PARRY name.

285.     That said photographic advertisements, depicting models wearing apparel bearing Offending Image D, have appeared on at least, and continue to appear as of the date of this complaint, on the BITNB Facebook website at www.facebook.com/BloodIsTheNewBlack.

286.     That, upon information and belief, defendant URBN employed Offending Image D for advertising and trade purposes by displaying Offending Apparel 2 in and/or throughout URBN retail stores in the State of New York and elsewhere. That such unauthorized display promotes and/or advertises inter alia, the BITNB brand and apparel, PARRY's brand, name, apparel and photography business and services, and potential sales of Offending Apparel 2.

287.     That B&M employed Offending Image D for advertising and trade purposes by prominently displaying Offending Apparel 3 upright on shelves and against walls inside B&M stores, including but not limited to in the State of New York. That such displays of Offending Apparel 3, bearing Offending Image D of TEEN serve to advertise and promote the B&M store, brand, apparel, and potential sales of Offending Apparel 3.

288.     That, upon information and belief, each of the aforesaid advertisements, was intended to and did confer upon defendants, or one or more of them, and economic benefit.

289.     That PARRY employed Offending Image D for advertising and/or trade purposes by employing same in at least one exhibition of his photography and on his website, either or both of which promoted and advertised PARRY's name, brand, and photography business and services in the State of New York and elsewhere. That such offending use(s) of TEEN's image were, upon information and belief, intended to and did boost PARRY's reputation in certain niches of the photography and/or fashion and/or art world, and/or thus bestow upon him an economic benefit by *inter alia*, his association with TEEN.

290.     That the aforesaid use(s) of TEEN's image, portrait and likeness for advertising and trade purposes is in violation of Sections §§50, 51 of the New York Civil Rights Law.

291.    That upon information and belief, the aforesaid offending use(s) of TEEN's Images by defendants, or one or more of them, continued subsequent to its receipt of written notice as to the violative nature of said use(s).

292.    That at no time did the defendants, or one or more of them, seek or obtain a written, signed model release, voucher, contract, license or permission to employ the images of the TEEN either on T shirts, websites, videos, advertisements, *nor for any other purpose whatsoever.*

293.    That such failure by the defendants, or one or more of them, was either negligent and/or grossly negligent.

294.    That PARRY's conduct is so egregious that after considerable investigation pursuant to Federal Rule 11 and otherwise, and upon information and belief, it is unprecedented in the history of the New York Civil Rights Law §§ 50, 51.

295.    That defendants, or one or more of them, held out to the general public that they had the right to license, employ on t-shirts to be offered for commercial sale, distribute, and/or sell TEEN's image (Offending Image D).

296.    That defendants, or one or more of them, possessed or acquired actual knowledge that they had no written authorization, consent or license from TEEN, or one legally authorized to provide same on her behalf, to use her image in any manner.

297.    That PARRY knew that he lacked such authorization from on or about March of 2010 when he photographed TEEN and did not obtain a written executed model release or equivalent.

298.    That, upon information and belief, BITNB and URBN, knew, from the time that they first received the Offending Image and/or Apparel (the specific dates of which are unknown to Plaintiffs as of the date of this Complaint but believed to be learned through discovery) that they

did not have a written model release from TEEN or one legally authorized to sign same on her

behalf for the offending uses of her image, as specified herein.

299.    That no later than receipt of Plaintiff's counsel's letter to the defendants, or one or

more of them, dated July 1, 2011, defendants, or one or more of them, had actual knowledge that

no written executed model release existed for the offending uses of TEEN's image, as specified

herein.

300.    Notwithstanding such knowledge, one or more of the defendants continued to

employ Plaintiff's image in violation of law.

301.    That the full nature and extent of defendant(s)' use(s) of TEEN's image is unknown

as of the date of this Complaint, such information being within each of such defendant's custody

and control.  That said information will likely be unearthed by Plaintiffs during discovery.

302.    As a result of the foregoing and pursuant to said statutes, but not to the exclusion of

any other remedies under common law or statute, plaintiff TEEN has been damaged and is entitled

to relief as per statute in the forms of compensatory damages, in a sum to be determined by this

Court but is upon information and belief not less than FIVE HUNDRED THOUSAND DOLLARS

($500,000), punitive or exemplary damages in a sum ultimately to be determined by this Court but

upon information and belief in a sum of not less than FIVE MILLION DOLLARS  ($5,000,000)

and costs and expenses incurred by plaintiffs in the prosecution of this action together with an

Order from this Court permanently restraining the defendants herein from utilizing the image or

likeness of the plaintiff TEEN in any manner or for any purpose whatsoever.

### THIRD CLAIM FOR RELIEF
### VIOLATIONS OF NEW YORK CIVIL RIGHTS LAW §50 AND §51
### AGAINST ALL DEFENDANTS

303.    That the New York Civil Rights Law §§ 50 and 51 specifically proscribe the use of

an individual's name, portrait or picture for trade, commercial or advertising without the written

consent of said individual. That said statutes provide *inter alia*, that compensatory and exemplary damages are recoverable thereunder (Sec. 51).

304.    Section 50 evidences a strong public policy against such unauthorized use, defining any such offense as a *misdemeanor*. Section 51 enumerates civil remedies available thereunder including but not limited to money damages in the form of compensatory and/or exemplary damages and injunctive relief.

305.    Defendant(s)' proscribed uses of TEEN'S image, portrait, and likeness are in direct violation of the New York Civil Rights Law § 50, 51 as there existed/exists no executed written consent to the specific uses complained of herein.

306.    That, upon information and belief, defendants, or one or more of them, employed an additional image of TEEN (not covered by Plaintiffs' First or Second Claim for Relief herein) for advertising and/or trade purposes by employing same on shirts, and participating in/organizing/agreeing for the creation, manufacture, and/or production of said shirts, and/or the distribution of said shirts to third-party retailers and/or defendant(s)' store front(s).

307.    That, upon information and belief, defendants, or one or more of them, used and employed such additional Image of TEEN for trade and/or advertising purposes by offering for sale and selling shirts bearing same.

308.    That, upon information and belief, defendants, or one or more of them, offered for sale, promoted, advertised, and/or sold shirts bearing an additional Image of TEEN to consumers in the State of New York.

309.    That upon information and belief, one or more of defendant(s)' use(s) of the additional image(s) of TEEN, as complained of herein, occurred in the State of New York.

310.    That, upon information and belief, defendants, or one or more of them, employed an additional image(s) of TEEN for advertising and/or trade purposes by employing same, or

consenting and/or authorizing others to employ same, on the websites (the identities of which are unknown to plaintiffs at this stage in the litigation but likely to be learned through discovery). That such display on the internet serves to advertise not only the potential sale of the offending Apparel, but the brand, company and products of the defendant offering same for sale, and/or well as PARRY's "brand" and photography business and/or services.

311.   That, upon information and belief, defendant, or one or more of them, employed an additional image(s) of TEEN for advertising and trade purposes by displaying same on shirts  in and/or throughout retail stores in the State of New York and elsewhere.  That such unauthorized display promotes and/or advertises *inter alia*, the potential sale of such apparel, the store in which the apparel is displayed, and/or the brand and/or clothing line which created and/or produced such apparel.

312.   That, upon information and belief, each of the aforesaid advertisements, was intended to and did confer upon defendants, or one or more of them, and economic benefit.

313.   That, upon information and belief, PARRY has employed and continues to employ additional image(s) of TEEN for advertising and/or trade purposes by employing same on at least his website.  That such display of TEEN's image, portrait, likeness, and name serves to promote and advertise PARRY's name, brand, and photography business and services.  That such offending use(s) of TEEN's Image Cy PARRY were, upon information and belief, intended to and did boost PARRY's reputation in the photography and/or fashion and/or art world, and/or bestow upon him an economic benefit.

314.   That the aforesaid use(s) of TEEN's image, portrait and likeness for advertising and trade purposes is in violation of Sections §§50, 51 of the New York Civil Rights Law.

315.     That upon information and belief, the aforesaid offending use(s) of TEEN's Images by defendants, or one or more of them, continued subsequent to its receipt of written notice as to the violative nature of said use(s).

316.     That at no time did the defendants, or one or more of them, seek or obtain a written, signed model release, voucher, contract, license or permission to employ the images of the TEEN either on T shirts, websites, videos, advertisements, *nor for any other purpose whatsoever*.

317.     That such failure by the defendants, or one or more of them, was either negligent and/or grossly negligent.

318.     That defendants, or one or more of them, held out to the general public that they had the right to license and employ an additional image(s) of TEEN on shirts to be offered for commercial sale, as well as the right to distribute and/or sell same.

319.     That defendants, or one or more of them, possessed or acquired actual knowledge that they had no written authorization, consent or license from TEEN, or one legally authorized to provide same on her behalf, to use her image in any manner.

320.     Notwithstanding such knowledge, one or more of the defendants continued to employ TEEN's image, portrait, or likeness in violation of law.

321.     That the full nature and extent of defendant(s)' use(s) of an additional image(s) of TEEN is unknown as of the date of this Complaint, such information being within each of such defendant's custody and control.  That said information will likely be unearthed by Plaintiffs during discovery.

322.     As a result of the foregoing and pursuant to said statutes, but not to the exclusion of any other remedies under common law or statute, plaintiff TEEN has been damaged and is entitled to relief as per statute in the forms of compensatory damages, in a sum to be determined by this Court but is upon information and belief not less than FIVE HUNDRED THOUSAND DOLLARS

57

($500,000), punitive or exemplary damages in a sum ultimately to be determined by this Court but upon information and belief in a sum of not less than FIVE MILLION DOLLARS ($5,000,000) and costs and expenses incurred by plaintiffs in the prosecution of this action together with an Order from this Court permanently restraining the defendants herein from utilizing the image or likeness of the plaintiff TEEN in any manner or for any purpose whatsoever.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF §43(a) OF THE LANHAM ACT
## AGAINST ALL DEFENDANTS

323.    That as set forth herein, TEEN's image and persona have been used extensively and employed in international advertising campaigns for well-known products and marks, recognizable to the general public in the United States and abroad.

324.    That TEEN's image, portrait and likeness have been employed in massive ad campaigns throughout the United States and abroad.  That as explained hereinabove, in an effort to keep the identity of TEEN private, such images are annexed to this Complaint as Exhibit "A").

325.    That TEEN's image, portrait, likeness, and name are recognizable to members of the general public.  That TEEN's image, portrait and likeness have been the subject of countless blogs commenting on her image, portrait and likeness.

326.    That PARRY has displayed TEEN's image, portrait and likeness, inclusive of the offending images which are the subject of this litigation, on his website, along with TEEN's name. That PARRY has exhibited such images at live exhibits and, upon information and belief, distributed same to third parties, thus exposing such image and the identity of TEEN to countless individuals.

327.    That the images of TEEN, taken by PARRY, which are the subject of this litigation have been massively distributed and published all over the internet on various blogs and websites, inclusive with TEEN's name.

328.     That PARRY and TEEN have become associated with each other via the wide dissemination of the offending subject images, and the notations of PARRY as photographer and TEEN as the model.

329.     That the offending images of TEEN which are the subject of this litigation are highly recognizable, and have become well known images to countless individuals in the State of New York, throughout the United States and abroad.

330.     That the inclusion of TEEN's image, portrait and likeness on apparel, *to wit*, T-shirts, has caused TEEN to be associated with *inter alia*, BITNB's brand and apparel, the BITNB/PARRY Apparel "brand" and clothing line, the B&M brand, store, and apparel.

331.     That defendants, or one or more of them, have used, in connection with Plaintiff's image, a device that is a false designation of origin, false or misleading description of fact, or false or misleading representation of fact.

332.     That printed on shirts bearing Offending Image C of TEEN is "BLOOD IS THE NEW BLACK" and "JASON LEE PARRY". That inclusion of TEEN on such BITNB/PARRY "branded" Apparel creates a false impression that TEEN is endorsing the BITNB/PARRY Apparel line, BITNB, and/or the incorporation of such offending image of her on shirts.

333.     That, upon information and belief, printed on shirts bearing Offending Image D of TEEN is "BLOOD IS THE NEW BLACK" and "JASON LEE PARRY". That inclusion of TEEN on such BITNB/PARRY "branded" Apparel creates a false impression that TEEN is endorsing the BITNB/PARRY Apparel line, BITNB, and/or the incorporation of such offending image of her on shirts.

334.     That the offering for sale, inclusion of Offending Apparel 1, and sale of Offending Apparel 1 by URBN creates a false impression that TEEN is endorsing URBN and the sale of the Offending Image C of TEEN by URBN.

335.    That, upon information and belief, the offering for sale, inclusion of Offending Apparel 2, and sale of Offending Apparel 2 by URBN creates a false impression that TEEN is endorsing URBN and the sale of the Offending Image D of TEEN by URBN.

336.    That stitched on shirts bearing Offending Image D of TEEN is "BRANDY ♥ MELVILLE". That inclusion of TEEN on such B&M "branded" apparel creates a false impression of TEEN is endorsing the B&M clothing line, B&M, and/or the incorporation of such offending image of TEEN on shirts.

337.    That as a result of defendants, PARRY's, BITNB's, B&M's, and upon information and belief URBN's unauthorized uses of TEEN's Image (Offending Image D), TEEN is made to appear as if she is endorsing underage possession and consumption of alcohol, to wit, beer, such representations being utterly false and misleading.

338.    That, as a result of defendants, PARRY's, BITNB's, and URBN's, or one or more of their, unauthorized uses of TEEN's Image (Offending Image C), TEEN is made to appear in a highly sexualized manner, creating a false and/or misleading impression that teen endorses such expressed sexuality, and that TEEN purposely posed for PARRY in such highly sexualized manner. That such impression is false and/or misleading.

339.    That TEEN did not intend to pose for PARRY in a manner which would cause her crotch to be a focal point, exposing areas of her skin beyond her legs, and what some believe to be in fact pubic hair. That PARRY's, BITNB's, and URBN's, or one or more of their, use(s) of such Offending Image C, creates a false and/or misleading representation and/or impression that TEEN is promiscuous and highly sexualized.

340.    That such false and/or misleading impressions and/or representations of TEEN by the defendants, or one or more of them, have caused economic and emotional harm to TEEN.

341.    That as result of the offending acts of PARRY, BITNB, and URBN, or one or more of them, as specified herein, against TEEN's wishes, Offending Image C of TEEN, for which the area between her legs is the focal point, has been published on countless internet sites and on shirts which have been sold all over the United States, and upon information and belief, abroad.

342.    That as result of the offending acts defendants, or one or more of them, as specified herein, against TEEN's wishes, Offending Image D of TEEN, for which she is made to appear as if she is possessing alcohol, having just consumed two if not five cans of beer, has been published on countless internet sites and on shirts which have been sold all over the United States, and upon information and belief, abroad.

343.    That it is impossible to calculate the number of passerbys who will see individuals wearing such shirts while walking down the street or elsewhere, thus further exposing the afore-specified offending image(s) of TEEN – and their focal points – to untold millions. Such exposure has caused TEEN emotional harm, embarrassment, and has cast TEEN in a light negative to her career, and which is harmful to her reputation.

344.    That the general public is likely to be, and has been, deceived and/or confused into thinking that shirts bearing TEEN's image(s) were sponsored by, endorsed by, and/or created with permission of TEEN, or that TEEN has provided her sponsorship or approval of such shirts or the brands for which they are associated.

345.    That as a result of the offending acts of defendants, or one or more of them, TEEN has been cast in a negative light, being associated with teen sex, underage drinking, low morals, and reckless behavior. That such impressions may negatively impact, or may have already negatively impacted, TEEN's modeling career. That it is impossible to determine the full nature and extent of such impact at this stage in the litigation. That TEEN may never be able to fully

measure the impact that such negative associations and impressions have cast on her modeling career.

346.    That PARRY and/or BITNB's use of TEEN's portrait, image or likeness in promotional video(s) and/or photograph(s) for the BITNB and/or BITNB/PARRY line have caused TEEN to be associated with the surrounding content in such video and accompanying photographs.

347.    That as described hereinabove, images of TEEN, are displayed in the offending promotional video on shirts worn by models, are depicted by BITNB and/or PARRY amidst scenes of binge drinking, girls taking off their shirts and exposing their breasts, smoking, and other promiscuous or questionable activities. That BITNB's and/or PARRY's incorporation of TEEN's image in such video has created a false representation, impression, or association of TEEN with such questionable and scandalous activity.

348.    That, similarly, PARRY's inclusion of TEEN on his website, in the company of inter alia, topless females, females posing in highly sexualized fashions, apparently naked females with blood dripping down their noses, females who appear to be bound, restrained, and/or passed out from abuse and/or drugs, has caused TEEN to be cast in a negative light, harmful to her reputation, and associated with the content of such questionable and scandalous imagery.

349.    That TEEN has been injured as a result of defendant(s)' unauthorized use(s) of TEEN's image, portrait and likeness.

350.    That, the use of Plaintiff's image in connection with commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of defendants' goods, services or commercial activities. That disinterested third parties may have relied on such misrepresentation.

351.    That the foregoing false endorsement constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

352.    As a proximate result of defendant's acts, Plaintiffs have been damaged in an amount believed to be not less than $1,000,000

353.    That, upon information and belief, and prior to conducting discovery, Plaintiffs have suffered damages in an amount to be determined, but not less than ONE MILLION DOLLARS ($1,000,000) ultimately to be determined by this Honorable Court;

**FIFTH CLAIM FOR RELIEF**
**CIVIL CLAIM FOR LIBEL AND/OR LIBEL PER SE**
**AGAINST ALL DEFENDANTS**

354.    That as set forth herein, TEEN's image and persona have been used extensively and employed in international advertising campaigns for well-known products and marks, recognizable to the general public in the United States and abroad.

355.    That TEEN's image, portrait and likeness have been employed in massive ad campaigns throughout the United States and abroad.  That as explained hereinabove, in an effort to keep the identity of TEEN private, such images are annexed to this Complaint as Exhibit "A").

356.    The assertions – that the readily identifiable TEEN is one or more of the following: an under-age drinker, sexually promiscuous, and/or intentionally posing in a way to make her crotch the focal point of imagery, and exposing what are believed by many to be pubic hairs – *are individually and collectively false and without any foundation in fact*.

357.    That the impression, representation, and/or assertion that TEEN is violative of the law in *inter alia*, the State of New York, for having consumed alcohol at or moments before the TEEN's photo shoot with PARRY, while under the legal drinking age, is false, without any foundation in fact or disclaimers, and constitutes libel **per se**.

358.    The impression, representation, and/or assertion that TEEN is sexually promiscuous and a child of low morals is utterly false, without foundation in fact nor are disclaimers present, constitutes libel **per se**.

359.    The assertions, representations, and/or impressions — sans disclaimer — that TEEN, a professional child model, consumed and/or possessed alcohol during a professional photo shoot constitutes  libel **per se.**

360.    That the forgoing specified representations and/or impressions by the defendants, or one or more of them, of TEEN, are egregiously false and defamatory and that plaintiff TEEN has suffered and will continue to suffer economic and emotional damage thereby.

361.    That the plaintiff TEEN has been falsely portrayed as set forth hereinabove, and defendants, or one or more of them, continued to employ TEEN's image in such offending manners subsequent to notice of same by plaintiff's counsel.

362.    That such false portrayals of TEEN by the defendants, or one or more of them, constitute libel and/or libel *per se*.

363.    As a proximate result of the forgoing, plaintiff TEEN has suffered and will continue to suffer emotional and economic harm and pecuniary loss.

364.    That the offending ad materially and adversely affects plaintiff's TEEN's modeling career.  That said losses are not speculative.

365.    That the use of and portrayal of the subject Offending images of TEEN on t-shirts, by the defendants, or one or more of them, is so outrageous so as to warrant a substantial award of compensatory and punitive damages so as to deter these defendants and others similarly situated from engaging in similar behavior.  That with respect, the draftors of the applicable statutes could not have conjured such a fact pattern as is now before this Honorable Court.

366.    That the use of and portrayal of images of TEEN, by PARRY and/or BITNB, in association with young females binge drinking, acting in a highly sexualized manner, and exposing their breasts to cameras is of a nature so outrageous, distasteful, and inappropriate setting for a 15-year old girl, under the age of consent, as to warrant a substantial award of compensatory and

punitive damages so as to deter these defendants and others similarly situated from engaging in similar behavior.

367.     That defendants, or one or more of them, employed TEEN'S image(s), as aforesaid, in a manner that is grossly irresponsible without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.

368.     That defendants, or one or more of them, employed TEEN's image(s), with actual malice towards exploiting the apparently scandalous, controversial, outwardly salacious nature(s) of same, in order to sell shirts in exchange for a commercial or economic benefit.

369.     That defendants, or one or more of them, knew or through reasonable investigation would have ascertained, that such attributions, descriptions, characteristics and/or identifiers as set forth hereinabove were false and defamatory.

370.     As a result of the foregoing, Plaintiff TEEN has been damaged and is entitled to relief in the form of compensatory damages, in a sum to be ultimately determined by this Court but is upon information and belief, not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000), and punitive or exemplary damages in a sum ultimately to be determined by this Court but upon information and belief, not less than FIVE MILLION DOLLARS ($5,000,000).

**JURY DEMAND**

371.     The plaintiffs request a trial by jury on all issues.

**WHEREFORE**, Plaintiffs demand judgment against the defendants as follows:

**ON THE FIRST CLAIM FOR RELIEF** – an award of an amount ultimately to be determined by the court, but upon information and belief, not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000) in compensatory damages, and FIVE MILLION DOLLARS ($5,000,000) in exemplary damages with interest thereon;

65

**ON THE SECOND CLAIM FOR RELIEF** – an award of an amount ultimately to be determined by the court, but upon information and belief, not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000) in compensatory damages, and FIVE MILLION DOLLARS ($5,000,000) in exemplary damages with interest thereon;

**ON THE THIRD CLAIM FOR RELIEF** – an award of an amount ultimately to be determined by the court, but upon information and belief, not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000) in compensatory damages, and FIVE MILLION DOLLARS ($5,000,000) in exemplary damages with interest thereon;

**ON THE FOURTH CLAIM FOR RELIEF** – an award of an amount ultimately to be determined by the court, but upon information and belief, not less than ONE MILLION DOLLARS ($1,000,000) in compensatory damages, and FIVE MILLION DOLLARS ($5,000,000) in exemplary damages with interest thereon;

**ON THE FIFTH CLAIM FOR RELIEF** – an award of an amount ultimately to be determined by the court, but upon information and belief, not less than ONE MILLION DOLLARS ($1,000,000) in compensatory damages, and FIVE MILLION DOLLARS ($5,000,000) in exemplary damages with interest thereon;

An award of attorneys fees, costs and expenses associated with the prosecution of this matter;

And such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       August 18, 2011

_____
EDWARD C. GREENBERG (ECG 5533)
EDWARD C. GREENBERG, LLC
*Attorneys for Plaintiffs*
570 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 697-8777

66