UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X   11-CV-5766 (GBD)
TEEN MODEL (a minor), by her parents, PARENTS,

                Plaintiffs,

    -against-

JASON LEE PARRY, BLOOD IS THE NEW BLACK,
URBAN OUTFITTERS, INC., and BRANDY &
MELVILLE N.Y. INC.,

                Defendants.
-----------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF URBAN OUTFITTERS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Callan, Koster, Brady & Brennan, L.L.P.
Attorneys for Defendant
URBAN OUTFITTERS, INC.
One Whitehall Street, 10th Floor
New York, New York 10004
(212) 248-8800
File No.: 060.158310

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................... ii

INTRODUCTION ..................................................... 1

POINT I

    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE
    LANHAM ACT AS AGAINST URBAN ............................... 1

POINT II

    PLAINTIFF'S CLAIMS UNDER THE NEW YORK CIVIL RIGHTS LAW,
    AND IN PARTICULAR PLAINTIFF'S PRAYER FOR PUNITIVE
    DAMAGES, SHOULD BE DISMISSED AS AGAINST URBAN ............. 5

POINT III

    PLAINTIFF'S STATE LAW LIBEL ACTION FAILS TO STATE
    A CAUSE OF ACTION ......................................... 8

CONCLUSION ...................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                    Page

Allen v. National Video, Inc.,
610 F. Supp. 612 (S.D.N.Y. 1985) .................................................. 4

ASA Music Prods. v. Thomsun Elecs.,
96 Civ 1872, 1998 U.S. Dist. LEXIS 22362 (S.D.N.Y. September 29, 1998) ...... 6n.3

Ashcroft v. Iqbal,
129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..................................... 6, 7

Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................... 10

Brinkley v. Casablancas,
80 A.D.2d 428, 438 N.Y.S.2d 1004 (N.Y. App. Div. 1st Dept. 1981) ........... 6, 7

Drexel Burnham Lambert v. Saxony Heights Realty,
777 F. Supp. 228 (S.D.N.Y. 1991) ............................................ 5n.2

Netzer v. Continuity Graphic Assocs.,
963 F. Supp. 1308 (S.D.N.Y. 1997) ........................................... 8, 9

Pirone v. MacMillan, Inc.,
894 F.2d 579 (2d Cir. 1990) ................................................. 3, 4

Sheppard v. Beerman,
18 F.3d 147 (2d Cir. 1994) .................................................. 6

Telecom Int'l Am., Ltd. v. AT&T Corp.,
280 F.3d 175 (2d Cir. 2001) ................................................. 1, 2

Walker v. Time-Life Films, Inc.,
784 F.2d 44 (2d Cir. 1986) .................................................. 5n.2

Welch v. Mr. Christmas Inc.,
57 N.Y.2d 143 (1982) ........................................................ 7, 8

Yurman Studio, Inc. v. Castaneda,
591 F. Supp. 2d 471 (S.D.N.Y. 2008) ......................................... 1


**Statutes and Regulations**

Fed. R. Civ. P. 12(b)(6) .......................................... 1, 10

15 U.S.C. § 1125 ................................................. 1, 2

## INTRODUCTION

Defendant Urban Outfitters, Inc. ("Urban") submits this memorandum of law in further support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint of Teen Model and Parents (hereinafter collectively referred to as "plaintiff" or "Teen").

## POINT I

### PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE LANHAM ACT AS AGAINST URBAN

"Section 43(a) of the Lanham Act provides two bases for liability: (i) false representations concerning the origin, association, or endorsement of goods or services through wrongful use of another's distinctive mark or other device; and (ii) false representations in advertising concerning the quality of goods and services ('false advertising')". Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 490 (S.D.N.Y. 2008). In her opposition to Urban's motion to dismiss, plaintiff incorrectly maintains that the Amended Complaint sufficiently alleges claims for both false endorsement and false advertising. See, Plaintiff's Memorandum of Law in Opposition at 5-9.

Plaintiff's allegations of false advertising are clearly insufficient. "To have standing for a [Lanham Act] false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001). Plaintiff's complaint does not, because it cannot, allege that Urban is a competitor of Teen. Rather, the complaint alleges that Teen provides modeling services (Am. Cmpl. ¶ 19), while also alleging, by contrast, that Urban is a retail outlet specializing in the sale of apparel. (Am. Cmpl. ¶ 6). Therefore, Teen and Urban are not, and were not during the relevant time period, competitors,

1

thereby leaving Teen without standing to raise false advertising claims under the Lanham Act. Telecom Int'l, 280 F.3d at 197. Moreover, plaintiff's complaint is entirely devoid of any claims of *competitive* injury. As such, on the face of pleadings, Teen's Lanham Act claims must fail inasmuch as they are premised on the false advertising prong of the statute.

Accordingly, as stated in Urban's initial moving papers, the only relevant inquiry under the Lanham Act is whether Urban's alleged sale of apparel bearing Teen's image amounts to a false designation of "origin, sponsorship, or approval of [Urban Outfitter's] goods" within the meaning of Section 43(a)(1)(A) of the Lanham Act. This section of the Lanham Act proscribes (1) any use in commerce; of (2) any word, term, name, symbol or devise, or any false designation of origin, false or misleading or misleading description of fact, or false or misleading representation of fact; where (3) such use is likely to cause confusion, or to cause mistake, or to deceive. See, Section 43(a)(1)(A).

In her opposition papers, plaintiff states that this prong of the statute is satisfied because the alleged use of Teen's image on apparel sold by Urban "creates a false or misleading representation of fact that [Teen] is somehow associated with [Urban]". Plaintiff's Memorandum of Law in Opposition at 5. However, plaintiff's complaint specifically alleges that the apparel in this case bears actual source identifiers, in the form of tags, which prominently identify the source as "Blood is the New Black" and "Jason Lee Parry", not Urban. (Am. Cmpl. ¶ 269). It is apparently for this reason that plaintiff rests the sufficiency of her complaint on the vague notion that Urban's subsequent sale of the apparel in question creates an "association" between Urban and Teen.

2

But this notion belies common sense. For example, it is common knowledge that Michael Jordan endorses Nike brand sneakers. It does not follow that Michael Jordan endorses or is associated with Foot Locker, Sears, Target, Walmart, and every other retailer that offers Nike sneakers for sale. Otherwise, any given retailer would have to sign a licensing agreement with Michael Jordan in order to sell Nike brand shoes bearing his image. The same common sense principle applies in this case. Even assuming the truth of plaintiff's allegation that she did not consent to the creation of the offending products bearing Jason Lee Parry's and Blood is the New Black's source identifiers, it does not follow that a subsequent retailer's (i.e., Urban) sale of these products implies any false association with Teen. This is doubly true where, as here, the complaint does not allege any cause of action based on contributory or vicarious trademark liability.

It is for this reason that Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990) is directly on point.[1] In Pirone, the Second Circuit held as a matter of law that no reasonable consumer would believe that Babe Ruth sponsored the calendar in question in that case. Id. at 585. Rather, the Court stated that the photographs identified a great ballplayer, and by so doing indicated the content of the calendar, not its source or sponsor. Id. This analysis was reinforced by the fact that the calendar bore numerous, prominent references to the actual publisher of the calendar. Id. at 584. Here, plaintiff's complaint concedes that source identifiers indicate Blood is the New Black and Jason Lee Parry are the source of the offending goods. (Am. Cmpl. ¶ 269). Likewise, plaintiff

---

[1] Plaintiff's attempts to distinguish Pirone on the basis of a "model versus non-model" distinction are unavailing. Regardless of a plaintiff's profession, the relevant inquiry is into the commercial use and appropriation of plaintiff's image. Despite not being a model, there is clear value in the image of Babe Ruth, which his estate in Pirone was seeking to protect. His image was not deemed less valuable or unworthy of protection because Babe Ruth was "not a model".

3

concedes that "as a practical matter the 'image is the product' and they are inextricably intertwined." (Am. Cmpl. ¶¶ 96, 116). Accordingly, at most, plaintiff's complaint alleges that Urban sold a product, sourced from certain codefendants. The nature of that product, as described in the complaint, does not use plaintiff's name or seek to associate plaintiff with Urban's brand. Rather, the product was simply a particular piece of apparel bearing the image of a woman. Accordingly, as a matter of law, there can be no confusion as to whether Teen sponsored, endorsed, or was associated with Urban based on the facts as alleged in the complaint.

Ironically, the case law relied upon by plaintiff in opposition makes the point. Plaintiff relies heavily on Allen v. National Video, Inc., 610 F. Supp. 612 (S.D.N.Y. 1985) for the proposition that the confusion requirement of a false endorsement claim is satisfied where the public believes the mark's owner approved of the infringing use. However, Allen demonstrates the fundamental flaw with plaintiff's attempted false endorsement cause of action: namely, Urban's alleged infringing use does not suggest a false endorsement.

In Allen, actor Woody Allen sued defendants "over an advertisement for defendant National Video (National) in which defendant Boroff, allegedly masquerading as plaintiff, portrays a satisfied holder of National's movie rental V.I.P. Card. Plaintiff asserts that the advertisement appropriates his face and implies his endorsement..." Id. at 617. The infringing use in Allen directly created the false impression that Woody Allen endorsed National Video's products, and that Mr. Allen was a satisfied customer of National Video. Here, by contrast (and similar to Pirone), plaintiff merely alleges that her image was part of a product bought and sold by Urban; there is no allegation that

4

Urban used plaintiff's image to promote its retail services generally, or that Urban used plaintiff's image to promote any of its other products. Plaintiff asks the Court to make the leap and assume that the sale of any product bearing an image necessarily implies endorsement or association between the person depicted and the retailer. However, if this were so, Walmart could not sell Air Jordans without paying Mr. Jordan for the privilege to do so. Accordingly, plaintiff's factual allegations are plainly insufficient to state a cause of action under the Lanham Act against Urban, especially in the absence of claims for secondary liability.

Therefore, it is respectfully requested that plaintiff's claims under the Lanham Act be dismissed as against Urban.[2]

## POINT II

### PLAINTIFF'S CLAIMS UNDER THE NEW YORK CIVIL RIGHTS LAW, AND IN PARTICULAR PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES, SHOULD BE DISMISSED AS AGAINST URBAN

Plaintiff's arguments in opposition to Urban's motion to dismiss Teen's New York Civil Rights claims essentially seek to ignore the entirety of Urban's arguments. Rather than address Urban's substantive arguments, plaintiff simply relies upon the fact that plaintiff's complaint utilizes the word "use" in their allegations against Urban; plaintiff entirely ignores the fact that the complaint does not allege facts sufficient to satisfy the

---

[2] Should the Court ultimately dismiss plaintiff's Lanham Act claims as against all defendants, the Court should decline to continue to exercise ancillary jurisdiction for the reasons set forth in Urban's initial moving papers. While this Court is surely more than competent to hear plaintiff's state law causes of action, it is Urban's position that the interests of state comity are always best served by adjudication of state claims in the courts of the state absent exceptional circumstances. See, Drexel Burnham Lambert v. Saxony Heights Realty, 777 F. Supp. 228, 240 (S.D.N.Y. 1991) (quoting Walker v. Time-Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986)).

legal definition of "use" under New York Civil Rights Law §§ 50, 51.³ Concededly, the "court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to guard a claim against dismissal. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Accordingly, the Court must address whether the allegations in plaintiff's complaint satisfy the legal definition of "use" within the meaning of New York law. The New York State Appellate Division, First Department's holding in Brinkley v. Casablancas, 80 A.D.2d 428, 438 N.Y.S.2d 1004 (N.Y. App. Div. 1st Dept. 1981) clearly defines the contours of a cognizable "use", and, based on those contours, Urban cannot be said to have used plaintiff's image. In Brinkley, the Court held that a merchandiser in the chain of commerce, if sufficiently removed from the initial creation of the offending good, cannot be said to have "used" plaintiff's likeness in the absence of some additional showing. The court stated,

> we do not believe that the merchandiser, which is not a publisher, and which sells a product exploiting the name, portrait or picture of a person, without either knowledge that such exploitation is unauthorized or even notice that would prompt reasonable inquiry, has 'used' that person's name, portrait or picture within the meaning of sections 50 and 51 of the Civil Rights Law so as to subject itself to liability for compensatory damages. To hold otherwise would subject such merchandiser to hazards over which it has no control, and impose upon it a burden disproportionate to the interest to be protected. Accordingly, the second cause of action

---

³ Plaintiff's attempt to baldly state that New York courts routinely find retailers in violation of Section 50 and 51 of the Civil Rights Law is unpersuasive. For example, in ASA Music Prods. v. Thomsun Elecs., 96 Civ 1872 (BDP) (MDF), 1998 U.S. Dist. LEXIS 22362 (S.D.N.Y. September 29, 1998), cited by plaintiff, the court found a retailer liable for such violations where the retailer was the producer of the infringing goods. Plaintiff cites no case law wherein a subsequent merchandiser, who did not produce the goods, was found liable under Section 50 and 51 of the Civil Rights Law.

6

>seeking damages for the use of the poster should be dismissed against [the retailer].

Id. at 443-44.

Here, it is undisputed that defendant Parry entered into a business relationship with defendant Blood is the New Black to provide imagery for and/or or create the offending apparel. (Am. Cmpl. 74). Following the creation of said apparel, defendant Parry and defendant Blood is the New Black distributed these pieces of apparel to various retailers, including Urban. (Am. Cmpl. 154). Accordingly, Urban is plainly not a publisher of the allegedly infringing images, but is merely a subsequent merchandiser with no reason to suspect that the apparel was created without Teen's alleged lack of consent. Plaintiff's opposition alleges that Urban "had a duty and obligation to determine whether plaintiff executed a written model release". Plaintiff's Memorandum in Opposition at 13. However, liability premised on such a negligence allegation is not supported by the case law and therefore cannot form the basis of a claim under New York Civil Rights Law §§ 50, 51. See, Brinkley, 80 A.D.2d 428, 443-44; Welch v. Mr. Christmas Inc., 57 N.Y.2d 143, 149 (1982).

Likewise, plaintiff alleges no facts that support the conclusory allegation that Urban had actual knowledge of plaintiff's lack of consent, mandating at minimum the dismissal of plaintiff's prayer for punitive damages. Simply stating that Urban had knowledge is insufficient to state a cause of action in the absence of any factual allegations supporting this threadbare recital of the elements of the claim. Ashcroft, 129 S. Ct. at 1949. Notably, there is no allegation in the complaint that Urban continued to use Teen's image following plaintiff's notification that there was a lack of consent. (See, Am. Cmpl. ¶¶ 199-216, detailing allegations of post-notice use of Teen's image by other

defendants).  Exemplary damages under Section 51 of the New York Civil Rights Law differ from common-law punitive damages in that "neither malice nor recklessness need be shown;" it is enough to show that defendant "knowingly used" plaintiff's likeness. Welch, 57 N.Y.2d at 149.  However, "knowing use" refers to a defendant's knowledge of a subject's lack of consent, not to knowledge of use *per se*.  Id.  As such, plaintiff's failure to allege any facts suggesting that Urban knew there was a lack of consent mandates dismissal of plaintiff's prayer for punitive damages as against Urban.

Therefore, plaintiff's claims arising under New York Civil Rights Law §§ 50, 51 should be dismissed as against Urban.[4]

## POINT III

### PLAINTIFF'S STATE LAW LIBEL ACTION FAILS TO STATE A CAUSE OF ACTION

In Netzer v. Continuity Graphic Assocs., 963 F. Supp. 1308 (S.D.N.Y. 1997), this Court's Hon. Justice Sweet provided a most eloquent and succinct summary of the law of defamation in New York.  This summary is instructive in the instant matter:

> In New York, a statement will be found defamatory only if it "tend[s] to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society." Fairley v. Peekskill Star Corp., 83 A.D.2d 294, 296, 445 N.Y.S.2d 156, 158 (2d Dept. 1981).  In analyzing the allegedly defamatory words, the court is to consider the publication as a whole and test its effect upon the average reader. [James v. Gannett Co., Inc., 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 353 N.E.2d 834 (1976)]. An allegedly

---

[4] Plaintiff's third cause of action rooted in the New York Civil Rights Law must be dismissed as a matter of course as it fails to allege any specific use of plaintiff's name or likeness. Accordingly, this cause of action should be dismissed on this basis alone. Plaintiff's opposition to Urban's motion does not address this deficiency in the pleadings, and therefore this branch of Urban's motion should be granted as a matter of course.

8

> defamatory statement must be interpreted in the context of the type of publication in which it appears. See Mullenmeister v. Snap-on Tools Corp., 587 F. Supp. 868, 873-75 (S.D.N.Y. 1984) (depiction of plaintiff wearing swastika not capable of defamatory meaning because in context of commercial, in-house newsletter, it could only be taken as designation of plaintiff's national origin, not as accusation of Naziism or anti-Semitism). The statement is to be read against the background and circumstances of its publication. James, 40 N.Y.2d at 420 (citations omitted).
>
> In the context of publications that "plainly involve[] humor, fiction and fantasy, or the bizarre," Frank v. National Broadcasting Co., Inc., 119 A.D.2d 252, 261, 506 N.Y.S.2d 869, 875 (2d Dept. 1986), a court will consider whether the statements give "rise to an impression that they are true" and whether they were "intended to injure." Id. at 257. Although the fictional or humorous nature of a publication will not necessarily insulate it from a libel claim, Fisher v. Country Wide Publications, Inc., 29 Misc. 2d 96, 98, 213 N.Y.S.2d 897, 899 (Sup. Ct. N.Y. Co. 1961), if the allegedly defamatory statement could not be "reasonably understood as describing actual facts about the plaintiff or actual events in which [he] participated," the publication will not be libelous. Pring v. Penthouse Intern., Ltd., 695 F.2d 438, 442 (10th Cir. 1982).

Id. at 1324.

Here, the images of plaintiff are plainly rooted in fiction, as plaintiff concedes that the photographs were taken as part of a staged, editorial photo shoot – a shoot in which plaintiff was a willing participant. (Am. Cmpl. ¶¶ 33-34). Moreover, the context in which the allegedly defamatory image is presented is on a T-shirt, not as part of an array photographs depicting plaintiff in the course of her everyday activities. (See, e.g., Am. Cmpl. ¶ 80). Accordingly, the photographs at issue cannot, as a matter of law, be susceptible to a defamatory meaning because no reasonable viewer could understand the photographs as describing actual facts about Teen or actual events in which she participated. See, Netzer, 963 F. Supp. at 1325.

Plaintiff rejects Urban's previously offered analogy on this point regarding Victoria Secret models wearing wings because "the average person knows that human beings do not grow angel wings". Plaintiff's Memorandum in Opposition at 15. So let us venture another analogy: Frequently, models are photographed with exotic animals without the public believing that the models own elephants or lions or tigers. Surely the public knows that there are persons in the world who do own exotic animals, just as some teenagers do drink underage, but the context of the presentation makes clear that such models do not own the animals with which they are photographed.

So too in this case: The highly stylized nature of the photographs in question, coupled with the presentation of the photographs on articles of clothing, coupled with plaintiff's concession that the photographs were taken as part of a staged shoot "on an outdoor set of substantial proportions" (Am. Cmpl. ¶ 34), all suggest the undeniable implication that, as a matter of law, no reasonable viewer could understand the photographs as describing actual facts about Teen or actual events in which she participated. Whether the complaint successfully hypothesizes a potential defamatory interpretation is irrelevant, as the courts apply a "plausibility standard" to determine whether dismissal pursuant to Rule 12(b)(6) is appropriate. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Therefore, because the images at issue cannot plausibly be considered defamatory on these facts, for the reasons stated *supra* and in Urban's initial moving papers, plaintiff's claims for libel must be dismissed in their entirety.

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons, in addition to those reasons set forth in defendant's initial moving papers, defendant Urban Outfitters, Inc. respectfully requests that the Court grant the instant motion in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      January 31, 2012

                          Respectfully submitted,

                          CALLAN, KOSTER, BRADY & BRENNAN L.L.P.

                          By: _____/s/_____
                               Warren S. Koster, Esq. (WSK-6753)
                          Attorneys for Defendant
                          URBAN OUTFITTERS, INC.
                          One Whitehall Street, 10th Floor
                          New York, New York 10004
                          (212) 248-8800